HARRY F. LUCAS, ET UX. *v.* MARYLAND DRYDOCK COMPANY

[No. 22, April Term, 1943.]

*Decided April 29, 1943.*

The cause was argued before SLOAN, C. J., DELAPLAINE, COLLINS, MARBURY, GRASON, MELVIN, and ADAMS, JJ.

*Arthur R. Padgett* for the appellants.

*William D. Macmillan,* with whom were *Semmes, Bowen & Semmes* on the brief, for the appellee.

COLLINS, J., delivered the opinion of the Court.

Frank H. Lucas, the son of Harry F. Lucas and Ruth Lucas, his wife, eighteen years of age, obtained a position with the Maryland Drydock Company on June 16, 1942, for wages of about $40 a week. Prior to that time he had been living at the home of his father and mother in Baltimore City, and had started his summer vacation, having completed three years in high school. The father, Harry F. Lucas, on June 27, 1942, wrote a letter to the Maryland Drydock Company stating that his son had just been promoted to the fourth year in high school, and was working at its plant until the opening of school in September; that he had taken the position without authority from the father. He asked the Drydock Company to terminate the services of his son immediately and to hold whatever earnings were due him until further authority. He stated that his son was a minor, eighteen years of age, and had drawn one pay

and had failed to report to his home. To this letter the Maryland Drydock Company replied to Harry F. Lucas, on July 2, 1942, that the action requested in his letter could not be taken.

On July 28, 1942, the said Harry F. Lucas and Ruth Lucas, appellants here, entered suit in the Court of Common Pleas of Baltimore City against The Maryland Drydock Company, a body corporate, in the amount of $500 for the services rendered by their son Frank H. Lucas during the term of his employment. After a trial before the court, without a jury, a judgment was rendered for the defendant for cost. An appeal is taken to this court from that judgment by virtue of General Rules of Practice and Procedure, III, Trials, Rule 9 (c), effective September 1, 1941. This rule provides that this court may review upon both the law and the evidence, but the judgment of the trial court shall not be set aside on the evidence, unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses, and is heard according to equity practice. *Sothoron v. West,* 180 Md. 539, 26 A. 2d 16.

In addition to the facts above set forth, the testimony shows that Frank H. Lucas wanted to go to work during vacation and his father sent him to two or three personnel managers, but that Frank did not want these positions. The boy finally obtained the position with the appellee on June 16, 1942. He brought his first pay home on June 26th and neither his father nor mother were at home, but the boy found a note from his father directing him to leave his pay there and he would see him later. The boy put $5.50 on the desk to repay him for car fare and lunch money and left a note that he would see him later about the rest of the money. The father arrived home between 12.30 and 1 A. M., found the $5.50 and the note, went up to his son's room, woke him up, and argued with the boy about the money. The father says that Frank wanted to handle the money,

and said his father would have to like it. Frank says he offered to pay $10 a week board, open a bank account, and handle the money as he wanted to get in the habit of being conservative. The father then says he slapped the boy, while Frank says his father choked him, and his cousin says that she saw bruises and red marks on his neck the next day. Frank then left the house in the rain to look for his mother who was working at Towson in the Bendix plant. He returned home wet, and the next morning with some of his clothes moved to the home of his cousin, a Mrs. Mary Bulko, on Saturday, June 27th, which is the day on which the father wrote the aforesaid letter to the appellee. On the Thursday following the Saturday when his son left home, his father went to Mrs. Bulko's home and he says that he told her if the boy was not home the next morning that he would take action. Mrs. Bluko says that he threatened to strike her. She did go to the police station and get some form of warrant for the appellant. Appellant's sister and two of his nieces testified that he was very disagreeable in his home and wanted to collect all the money, and was a bad influence. Frank testified that he had always been afraid of his father. The evidence shows that the appellee had paid the boy up until the time of the trial, for his services, the sum of about $748.25, and at that time the boy was still living with Mrs. Bulko. The father testified that he did not want to keep any of his son's money but wanted to see that the boy did not waste it.

In the early case of *Bullett v. Worthington,* 3 Md. Ch. 99, at page 104, it was said: "Under such circumstances, and, indeed, even though the son did not live with the father, still, being a minor, the father was entitled to his services, and could maintain an action for them, unless, by some act of his own, he had divested himself of his control over him. *Mercer v. Walmsley,* 5 Har. & J. 27 (9 *Am. Dec.* 486)." In the case of *Malone v. Topfer,* 125 Md. 157, at pages 160 and 161, 93 A. 397, at

page 398, *Ann. Cas.* 1916E, 1272, where a mother sued for loss of services of the daughter, the father and mother having been divorced, the court said: "Whether either parent has by his or her act forfeited the parental rights with respect to their child has several times been considered. If such be the case the parent so forfeiting his or her right would thereby be debarred from maintaining such an action as the present one. That a parent may destroy the relation by abandonment, neglect or cruelty seems well established, but 'in what manner and by what acts this can be done must depend upon the special circumstances in each case.' *Greenwood v. Greenwood*, 28 Md. (369), 381." Code, 1939, Art. 72A, Sec. 2, provides: "If one of the parents be dead, or has abandoned the child, or been deprived of its custody by court decree, the other is entitled to its services and earnings."

In the instant case there is no claim by the mother separately to the services of the boy, and this contention was not argued by the appellants. This is a joint action of the father and mother. They are not separated but live together in the same home and from the record have no other home. The appellants contend, in part, in their brief, as follows: "The right of a parent to the child's earnings arises out of the duty to support the child; it is contingent on the actual furnishing of such support, and hence it is lost when the parent abandons the child, neglects or refuses to support and maintain it, or forces it to leave home and labor for its own livelihood. 46 *C. J.* 1287." The mother, of course, did not support the boy after he left home. By the admission on her part that the right to the child's earnings depend upon support of the child, she would not be entitled to his pay. The appellants further contend that: "A parent being charged with the training and education of his child has the right to exercise such control and restraint and to adopt such disciplinary measures for the child as will enable him to discharge his

parental duty. This includes the right to chastise refractory and disobedient children. But at the same time, the law, in its regard for the safety of the child, has prescribed bounds beyond which parental discipline should not be carried. In chastising a child, the parent must be careful that he does not exceed the bounds of moderation, and inflict cruel and merciless punishment; if he does, the law will refuse any longer to recognize his parental privilege. 39 *Am. Jur.* 601; 1 *Schouler Dom. Rel.*, 6th Ed., 783; *Madden Dom. Rel.*, 410."

The question for our decision in the case now before us is whether the father, under the special circumstances of this case and in this day and age, divested himself of his parental rights over his son, Frank H. Lucas, by his cruel treatment? The father acquiesced in his son's desire to work during his vacation. The boy obtained what is well described as "laudatory work" under conditions now existing. The father made no objection to the position held by the boy until he refused to turn his pay over to him. The boy left part of his pay for his father and, in a note, advised him that he would see him later about the rest of the money. In spite of this, after the boy had been working all day, the father went up to his room after midnight, woke him, and after an argument about the money, choked this eighteen year old boy and frightened him to such an extent that he went out in the rain to try to find his mother. The next day the boy left home because he said he was afraid of his father and had always been afraid of him, that he had seen his mother being beaten by his father. The father's actions were enough to frighten the boy. In order to get a place to live the boy went to his cousin's home, where he paid board. The father later went to that home and created such a disturbance that it was considered necessary to go to the police for protection. The father's sister testified that his attitude toward Frank was not very good and he made the boy's mother's life miserable; that he had a very bad and violent temper and once choked her mother.

Without repeating more of the testimony, we agree with the finding of the trail judge that Frank H. Lucas was emancipated by the intemperate and brutal treatment from the father and was entitled to work and collect his own pay. The trial judge had the witnesses before him and had the opportunity to observe their demeanor while testifying, and his conclusion of fact should not be lightly disturbed by us, as has been said in many equity cases previously, and under which practice this case is heard on appeal. A few of those cases are: *Oertel v. Oertel*, 145 Md. 177, 125 A. 545; *Jacobs v. Jacobs*, 170 Md. 405, 185 A. 109; *Bortner v. Leib*, 146 Md. 530, 126 A. 890; *Farmers' Milling & Grain Co. v. Urner*, 151 Md. 43, 134 A. 29; *McClees v. McClees*, 162 Md. 70, 158 A. 349. Under the rule, *supra*, which brings this case here on appeal, the judgment of the trial court should not be set aside on the evidence, unless clearly erroneous. The judgment should be affirmed.

*Judgment affirmed, with costs.*