697 A.2d 468

Natasha RENKO

v.

Teresa Kaylor McLEAN.

No. 77, Sept. Term, 1996.

Court of Appeals of Maryland.

July 30, 1997.

466

Gerard P. Uehlinger, Towson, for Appellant.

Hugh W. Farrell, Columbia, for Appellee.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, RAKER and WILNER, JJ.

KARWACKI, Judge.

In *Warren v. Warren,* 336 Md. 618, 650 A.2d 252 (1994), and *Frye v. Frye,* 305 Md. 542, 505 A.2d 826 (1986), this Court declined to create an exception to the parent-child immunity doctrine in motor tort cases based upon the existence of compulsory automobile liability insurance coverage. We are asked in this case to reexamine those decisions. Having done so, we shall reaffirm the vitality of the parent child-immunity doctrine in this State and affirm the judgment of the Circuit Court for Anne Arundel County.

## I.

The facts of this case are brief and undisputed. On December 8, 1992, Natasha Renko suffered serious injuries when her biological mother, Teresa Kaylor McLean, negligently drove the car both women were occupying into the rear of another vehicle. At the time, Natasha Renko was seventeen years old.

On January 18, 1994, and following her eighteenth birthday, Renko filed a Complaint and Election of Jury Trial in the Circuit Court for Anne Arundel County seeking damages in the amount of $100,000 for injuries she allegedly sustained in the December 8, 1992 automobile accident. The Complaint named Teresa McLean and her husband, Robert McLean,[1] as defendants,[2] here appellees.

---

1. Robert McLean is Natasha Renko's stepfather.

2. The Complaint charged Teresa McLean with direct negligence as the operator of the motor vehicle in which Natasha Renko sustained her injuries. Robert McLean was named as a defendant under a theory of vicarious liability for engaging Teresa McLean as an agent or servant.

**468**

Both Teresa and Robert McLean filed Motion[s] to Dismiss. Robert McLean subsequently filed an independent Motion for Summary Judgment. In a hearing on the motions, Renko beseeched the court to recognize an exception to the parent-child immunity doctrine and allow emancipated children to file actions against their parents for injuries sustained in motor vehicle accidents occurring in minority between fifteen and eighteen years of age. The court declined to do so and entered judgment in favor of the appellees.

Renko appealed the judgment entered in favor of her mother to the Court of Special Appeals.[3] We issued a writ of certiorari before consideration by the intermediate appellate court of the issues presented in this appeal.

## II.

For nearly seventy years, the parent-child tort immunity doctrine has been, with few exceptions,[4] a salient feature of Maryland law. *See Schneider v. Schneider*, 160 Md. 18, 152 A. 498 (1930).[5] It remains so today.

Once an absolute bar to tort actions between parents

---

**3.** Natasha Renko did not appeal the judgment entered in favor of her stepfather, Robert McLean.

**4** **We have departed from this rule on only two occasions.** First, when a child has suffered cruel or unusually malicious conduct at the hands of a parent, an action for monetary damages may be maintained. *Mahnke v. Moore*, 197 Md. 61, 77 A.2d 923 (1951). Second, a child may sue a parent's business partner for negligence committed in the operation of the partnership. *Hatzinicolas v. Protopapas*, 314 Md. 340, 550 A.2d 947 (1988). The reasons for these departures are discussed more fully, in Part III a., *infra*.

**5.** The first formulation of the parent-child immunity doctrine was adopted by the Supreme Court of Mississippi in *Hewlett v. George*, 68 Miss. 703, 9 So. 885 (1891). Mississippi has since repudiated the doctrine in motor tort cases. *See Glaskox v. Glaskox*, 614 So.2d 906 (Miss.1992).

and their minor children,[6] the parent-child immunity doctrine grew out of an abiding belief that it served the compelling public interest in preserving, under normal circumstances, the internal harmony and integrity of the family unit and parental authority in the parent-child relationship. *Warren v. Warren,* 336 Md. 618, 622, 650 A.2d 252, 254; *Smith v. Gross,* 319 Md. 138, 145–46, 571 A.2d 1219, 1222 (1990); *Frye,* 305 Md. at 548, 505 A.2d at 829–30; *Yost v. Yost,* 172 Md. 128, 134, 190 A. 753, 756 (1937); *Schneider,* 160 Md. at 21–22, 152 A. at 499–500. In fact, the special relationship, with its reciprocal duties and obligations, that the minor child shares with his or her parents forms a major component of the foundation upon which the parent-child immunity doctrine is built—a relationship recognized both at common law[7] and by the General Assembly.[8] Other justifications offered for the rule include the prevention of fraud and collusion among family members to the detriment of thirdparties, and the threat that intrafamilial litigation will deplete family resources. *See Warren,* 336 Md. at 625, 650 A.2d at 255.

---

**6.** The immunity does not apply to tort actions between parents and their adult children arising beyond minority. *Waltzinger v. Birsner,* 212 Md. 107, 125–26, 128 A.2d 617, 627 (1957).

**7.** *See, e.g., Greenwood v. Greenwood,* 28 Md. 369, 381 (1868)(father entitled to earnings of minor child); *Lucas v. Maryland Drydock,* 182 Md. 54, 58–60, 31 A.2d 637, 639 (1943)(parents possess right to discipline children for the benefit of their education); *Mahnke,* 197 Md. at 64, 77 A.2d at 924 (minor childrens' rights inferior to parental rights so that latter can effectively discharge their parental obligations); *Rand v. Rand,* 280 Md. 508, 510–11, 374 A.2d 900, 902 (1977)(duty of support entitles father to child's earnings and services); *Sininger v. Sininger,* 300 Md. 604, 611, 479 A.2d 1354, 1358 (1984)(parents have duty to support adult incapacitated child); 2 WILLIAM BLACKSTONE, COMMENTARIES, CH. 16, OF PARENT AND CHILD.

**8.** Indeed, Maryland Code (1984, 1991 Repl.Vol., 1996 Supp.), § 5–203(b)(1) of the Family Law Article obligates parents to provide for the "support, care, nurture, welfare, and education of their children," and §§ 10–203 and 10–209 of that same Article provide for civil and/or criminal penalties upon a failure to do so. *See also* §§ 10–301, *et seq.* (Uniform Reciprocal Enforcement of Support Act). In that regard, the preservation of the family is, and has always been, a primary objective of Maryland law. *See* § 4–401 of the Family Law Article.

■ Nevertheless, the parent-child immunity doctrine has never stood static where historical experience and common sense dictated that it must yield. Indeed,

"[t]he parent[-]child immunity rule ... was a creature of the common law. It was judicially conceived, judicially adopted in Maryland, judicially changed in certain significant aspects, and otherwise judicially nurtured and applied in this jurisdiction[.]"

*Frye,* 305 Md. at 566, 505 A.2d at 839; *see also* n.4, *supra.* But our acknowledgment that circumstance sometimes severs the doctrine from its rationale and reason in no way detracts from our fundamental belief that "the parent-child immunity rule [is still] essential to the maintenance of discipline and to the stability of family harmony." *Frye,* 305 Md. at 561, 505 A.2d at 836; *see also Warren,* 336 Md. at 622–24, 650 A.2d at 254–55.

In *Frye, supra,* we exhaustively surveyed the creation and refinement of the parent-child immunity doctrine both in this State and across our Country. Despite the growing chorus of criticism surrounding the doctrine,[9] we determined that the parent-child relationship had changed little, if at all, in the ensuing years since our predecessors first recognized parent-child immunity. We thus concluded that "today's parent-child relationship, as recognized by this Court and the Legislature, furnishes no compelling reason to abrogate the rule." *Id.* at 561, 505 A.2d at 836; *see also Warren,* 336 Md. at 627–28, 650 A.2d at 256–57.

---

**9.** *See, e.g.,* Pipino, *In Whose Best Interest? Exploring the Continuing Validity of the Parent Child Immunity Doctrine?,* 3 Ohio St. L.J. 1111 (1992); W. Prosser & W.P. Keeton, The Law of Torts § 122 (5th ed.1984); Comment, *Parent–Child Tort Immunity: Time for Maryland to Abrogate an Anachronism,* 11 U.Balt. L.Rev. 435 (1982); Hollister, *Parent–Child Immunity: A Doctrine in Search of Justification,* 50 Fordham L.Rev. 489 (1982); Comment, *The Demise of Parent–Child Immunity,* 12 Willamette L.J. 605 (1976); Comment, *Time to Abolish Parent–Child Tort Immunity: A Call to Repudiate Mississippi's Gift to the American Family,* 4 Nova L.J. 25 (1980); McCurdy, *Torts Between Parent and Child,* 5 Vill. L.Rev. 521 (1960); McCurdy, *Torts Between Persons in Domestic Relation,* 43 Harv. L.R. 1030, 1077–1081 (1930).

## III.

Renko nonetheless mounts a three-pronged attack upon the parent-child immunity doctrine. She asserts that (1) adult children should be allowed to maintain actions against their parents for injuries occurring in their minority; (2) no contemporary justification exists to apply the doctrine to the facts of the case *sub judice* in light of compulsory motor vehicle liability insurance; and (3) any such application is violative of Articles 19 and 24 of the Maryland Declaration of Rights and of the Fourteenth Amendment to the United States Constitution. We shall address each of these contentions in turn.

### a.

Renko correctly points out that we have permitted suits between parents and their minor children in limited circumstances. For instance, we have held that a minor child may maintain an action against a father's business partner for alleged negligence arising out of the operation of the partnership. *Hatzinicolas v. Protopapas,* 314 Md. 340, 550 A.2d 947 (1988). That decision was predicated upon our belief that the parent-child relationship, so important to the parent-child immunity rule, would remain inviolate in a suit against the father's business partner. *Id.* at 357, 550 A.2d at 947.

We further observed that (1) assuming the existence of a business liability insurance policy, the father had already paid his share of liability through his contribution to policy premium payments; or (2) it would otherwise be unrealistic to assume that the father did not take his partnership contribution obligation [10] into account when the familial decision was made to initiate a suit against his partner; and (3) although

---

**10.** Md.Code (1993 Repl.Vol., 1996 Supp.), § 9–401 of the Corporations and Associations Article requires that

"(1) Each partner ... must contribute towards the losses, whether of capital or otherwise, sustained by the partnership according to his share in the profits.

(2) The partnership must indemnify every partner in respect of payments made and personal liabilities reasonably incurred by him in the ordinary and proper conduct of its business, or for the preservation of its business or property."

the ultimate decision to sue may impair or even destroy the relationship between the partners, that relationship is not the focus or concern of the parent-child immunity rule. *Id.* at 358, 550 A.2d at 956. Thus, despite the possible financial impact upon the father (and therefore, the family) by the successful prosecution of a suit against his business partner by a minor child, we concluded that "preservation of the family interests [justifying the parent-child immunity doctrine] does not require [the extension of the doctrine] to bar any recovery from a parent's partner." *Id.* at 357, 550 A.2d at 955.

Recognizing that reality sometimes belies the ideal of family life, our predecessors also deemed permissible a suit by a minor child against her father's estate for alleged injuries she sustained when, within the span of one week, the father both murdered the child's mother and committed suicide in the child's presence. *Mahnke v. Moore*, 197 Md. 61, 77 A.2d 923 (1951). The Court reasoned that

"[i]n these circumstances, there can be no basis for the contention that the daughter's suit against her father's estate would be contrary to public policy, for the simple reason that there is no home at all in which discipline and tranquility are to be preserved.... [W]hen ... the parent is guilty of acts which show complete abandonment of the parental relation, the rule giving him immunity from suit by the child, on the ground that discipline should be maintained in the home, cannot logically be applied, for when he is guilty of such acts he forfeits his parental authority and privileges, including his immunity from suit.... Justice demands that a minor child shall have a right of action against a parent for injuries resulting from cruel and inhuman treatment or for malicious and wanton wrongs."

*Id.* at 67–68, 77 A.2d at 926.

Renko contends that since this Court has already permitted children to maintain actions against their parents for acts

---

In our view, application of § 9–401 would have "the economic effect [of] ... reduc[ing] the recovery within the family unit by the parental partner's contractual, pro rata share of the partnership liability to the plaintiff." *Hatzinicolas*, 314 Md. at 359, 550 A.2d at 956.

occurring after the child reaches the age of majority, *see Waltzinger v. Birsner,* 212 Md. 107, 128 A.2d 617 (1957), we should take the logical step of allowing otherwise adult children to sue their parents for wrongful acts that occur during minority. We see no such logic. In fact, Renko's proffered solution to her particular dilemma would result in a *de facto* abrogation of the parent-child immunity doctrine in its entirety.

Maryland Code (1995 Repl.Vol., 1996 Supp.), § 5–201 [11] of the Courts & Judicial Proceedings Article permits minors to bring tort actions for injuries sustained in minority at the hands of another within three years after reaching the age of majority. Thus, an injured minor child could simply wait until reaching the age of majority before initiating a suit that is otherwise barred in his or her infancy. In that circumstance, the parent-child immunity doctrine would serve not as a bar to actions between parent and child, but rather as an obstacle easily overcome with the passage of time. The looming specter of a lawsuit is as surely detrimental to family peace and harmony and parental authority as is the actual suit itself. Given this Court's long commitment to the parent-child immunity doctrine, we refuse to create an exception that would effectively negate the rule and open courthouse doors to every conceivable dispute between parent and child. *See Warren,* 336 Md. at 626, 650 A.2d at 256. Indeed, the rule was fashioned to prevent just that. *Id.*

### b.

Renko alternatively contends that "with mandatory automobile insurance creating universal coverage for auto torts, there can be no rational objection to recovery by an emancipated

---

11. Section 5–201 provides in relevant part:

"**Persons under a disability.**

(a) *Extension of time.*—When a cause of action subject to a limitation under Subtitle 1 of this title accrues in favor of a minor or mental incompetent, that person shall file his action within the lesser of three years or the applicable period of limitations after the date the disability is removed."

child in" the case *sub judice.* Maryland Code (1992, 1996 Supp.), § 17–103 of the Transportation Article and Md.Code (1957, 1994 Repl.Vol., 1995 Supp.), Art. 48A, §§ 539, 540, 541 respectively require Maryland drivers to procure, and Maryland insurers to provide, certain minimum liability insurance coverage for personal injury and property damage caused by automobile accidents resulting from the primary negligence of the insured. *See National Grange Mut. Ins. Co. v. Pinkney,* 284 Md. 694, 704, 399 A.2d 877, 882 (1979). Included within these statutes are uninsured motorist provisions that enable innocent victims of automobile accidents to recover from their own insurers in the event that the negligent driver is without insurance. Art. 48, § 541; *see also Nationwide Mut. Ins. Co. v. Webb,* 291 Md. 721, 737, 436 A.2d 465, 474–75 (1981). It is these statutes upon which Renko relies.

We recognized in *Warren and Frye, supra,* that an overwhelming majority of jurisdictions have abrogated the parent-child immunity doctrine in whole or in part. *See Warren,* 336 Md. at 627 n. 2, 650 A.2d at 257 n. 2; *Frye,* 305 Md. at 562–54, 505 A.2d at 836–37. For a discussion of those cases, see Romualdo P. Eclavea, Annotation, *Liability of Parent for Injury to Unemancipated Child Caused by Parent's Negligence—Modern Cases,* 6 A.L.R.4th 1066 (1981, 1996 Supp.).

At the time we issued the *Warren* opinion, "[o]nly eight states, including Maryland, continue[d] to adhere to the doctrine of parent-child immunity without exception for motor torts." 336 Md. at 621 n. 1, 650 A.2d at 254 n. 1. Those same jurisdictions continue to stand their ground.[12]

Other jurisdictions, however, have found persuasive arguments calling for the abolition of the parent-child immunity doctrine in motor tort cases. The seminal decision in this area

---

**12.** *See* La.Rev.Stat. § 9:571 (West 1997); *Mitchell v. Davis,* 598 So.2d 801 (Ala.1992); *Robinson v. Robinson,* 323 Ark. 224, 914 S.W.2d 292 (Ark.1996); *Terror Mining Co. v. Roter,* 866 P.2d 929 (Colo.1994); *Mohorn v. Ross,* 205 Ga.App. 443, 422 S.E.2d 290 (1992); *Vaughan v. Vaughan,* 161 Ind.App. 497, 316 N.E.2d 455 (1974); *Pullen v. Novak,* 169 Neb. 211, 99 N.W.2d 16 (1959).

is *Sorensen v. Sorensen,* 369 Mass. 350, 339 N.E.2d 907 (1975). There, the Supreme Judicial Court of Massachusetts observed:

"In dealing with an automobile accident in which two passengers, one an unemancipated minor child of the defendant driver and the other a minor who had no familial relationship to the defendant driver, are injured, it would be incongruous to permit recovery against a parent and the parent's insurance company by the unrelated child but to deny recovery to the parent's child when culpability is admitted or established."

*Id.* at 360, 339 N.E.2d at 913. Noting the basis of the parent-child immunity doctrine, the court commented that

"[t]he primary disruption to harmonious filial relations is not the lawsuit brought for damages after the injury but the injury itself, resulting from the misconduct of a parent. *Falco v. Pados,* 444 Pa. 372, 380, 282 A.2d 351[, 355] (1971). When the wrong has been committed, the harm to the basic fabric of the family has already been done and the source of rancor and discord already introduced into family relations. *Tamashiro v. De Gama,* 51 Haw. 74, 78, 450 P.2d 998[, 1001] (1969). *Balts v. Balts,* 273 Minn. 419, 429, 142 N.W.2d 66[, 73] (1966). It can hardly aid family reconciliation to deny the injured child access to the courts and, through them, to any liability insurance which the family might maintain."

*Id.* at 360, 339 N.E.2d at 913.

Considering the same issue, the Supreme Court of Delaware concluded, that with the almost universal existence of motor vehicle liability insurance,

"the domestic tranquility argument is, at best, hollow. Liability insurance impersonalizes the suit and negates the possible disruption of family harmony by easing the financial repercussions of the accident. In short 'when insurance is involved, the action between parent and child is not truly adversary; both parties seek recovery from the insurance carrier to create a fund for the child's medical care and support without depleting the family's other assets.'"

*Williams v. Williams,* 369 A.2d 669, 672 (Del.1976)(citing *Sorensen,* 369 Mass. at 362–63, 339 N.E.2d at 914); *see also Schneider v. Coe,* 405 A.2d 682 (Del.1979)(affirming abrogation of parent-child immunity in auto tort cases where insurance coverage exists). Stated otherwise, "domestic peace and harmony may be more threatened by denying the cause of action than by permitting one, especially where there is insurance." *Glaskox v. Glaskox,* 614 So.2d 906, 911 (Miss.1992). Thus, the argument goes, abrogating parent-child immunity where automobile liability insurance exists furthers the objectives of the rule by relieving the family of the financial burden of an adverse judgment while at the same time providing a means of recovery for the injured child. Numerous other jurisdictions concur in this view.[13]

The Delaware court added that the "domestic-tranquility justification" also lacked merit in light of the fact that other courts have permitted various types of intrafamilial litigation, including, *inter alia,* suits between siblings. *Williams,* 369 A.2d at 672 (citing *Midkiff v. Midkiff,* 201 Va. 829, 113 S.E.2d 875 (1960))(suit brought by a minor against his unemancipated brother for injuries sustained in a motor vehicle accident); *see also Smith v. Kauffman,* 212 Va. 181, 185, 183 S.E.2d 190, 194

---

**13.** *See Broadbent v. Broadbent,* 178 Ariz. 53, 54–55, 870 P.2d 1149, 1150 (1993); *Myers v. Robertson,* 891 P.2d 199, 204 (Alaska 1995); *Ard v. Ard,* 414 So.2d 1066, 1070 (Fla.1982); *Farmers Ins. Group v. Reed,* 109 Idaho 849, 851, 712 P.2d 550, 552 (1985); *Cates v. Cates,* 156 Ill.2d 76, 107, 189 Ill.Dec. 14, 29, 619 N.E.2d 715, 730 (1993); *Nocktonick v. Nocktonick,* 227 Kan. 758, 768, 611 P.2d 135, 141 (1980); *Black v. Solmitz,* 409 A.2d 634, 639 (Me.1979); *Transamerica Ins. Co. v. Royle,* 202 Mont. 173, 180, 656 P.2d 820, 824 (1983); *Bonte v. Bonte,* 136 N.H. 286, 289, 616 A.2d 464, 465–66 (1992); *France v. A.P.A. Trans. Corp.,* 56 N.J. 500, 506–07, 267 A.2d 490, 494 (1970); *Guess v. Gulf Ins. Co.,* 96 N.M. 27, 29, 627 P.2d 869, 871 (1981); *Nuelle v. Wells,* 154 N.W.2d 364, 366–67 (N.D.1967); *Unah v. Martin,* 676 P.2d 1366, 1368 (Okla.1984); *Winn v. Gilroy,* 296 Or. 718, 731–32, 681 P.2d 776, 784 (1984); *Silva v. Silva,* 446 A.2d 1013, 1015–16 (R.I.1982); *Jilani v. Jilani,* 767 S.W.2d 671, 673 (Tex.1988); *Smith v. Kauffman,* 212 Va. 181, 185–86, 183 S.E.2d 190, 194 (1971); *Merrick v. Sutterlin,* 93 Wash.2d 411, 416, 610 P.2d 891, 893 (1980); *Lee v. Comer,* 159 W.Va. 585, 589–90, 224 S.E.2d 721, 721–23 (1976).

(1971)(parent-child immunity anachronistic when applied to automobile accident litigation).

The fraud-collusion justification for the parent-child immunity doctrine too has suffered its critics, among them, the Mississippi Supreme Court—the birthplace of the parent-child immunity doctrine. *See Hewlett v. George,* 68 Miss. 703, 9 So. 885 (1891). In *Glaskox, supra,* the court majority observed that

" '[t]he possibility of collusion exists to a certain extent in any case. Every day we depend on juries and trial judges to sift evidence in order to determine the facts and arrive at proper verdicts. Experience has shown that the courts are quite adequate for this task. In litigation between parent and child, judges and juries would naturally be mindful of the relationship and would be even more on the alert for improper conduct.' "

614 So.2d at 912 (quoting *Nocktonick v. Nocktonick,* 227 Kan. 758, 768–69, 611 P.2d 135, 142 (1980)). In a similar vein, the Supreme Court of Pennsylvania has added:

"In the last analysis it is much to be preferred that we depend upon the efficacy of the judicial process to ferret out the meritorious from the fraudulent rather than using a broad broom to sweep away a class of claims, a number of which are admittedly meritorious."

*Falco v. Pados, supra,* 444 Pa. at 381, 282 A.2d at 356.

Recognizing the continuing need to protect parental authority and family harmony, some jurisdictions have attempted to limit immunity to negligent conduct arising out of an "exercise of parental authority . . . [or] an exercise of ordinary parental discretion with respect to the provision of food, clothing, housing, medical and dental services, and other care." *Goller v. White,* 20 Wis.2d 402, 413, 122 N.W.2d 193, 198 (1963); *see also Jilani v. Jilani,* 767 S.W.2d 671, 672 (Tex.1988); *Plumley v. Klein,* 388 Mich. 1, 9, 199 N.W.2d 169, 172–73 (1972); *Rigdon v. Rigdon,* 465 S.W.2d 921, 923 (Ky.1971).

California and New York have adopted their own unique brands of parent-child immunity. California courts apply a

"reasonable parent" standard to determine the viability of tort actions between parent and child. *Gibson v. Gibson,* 3 Cal.3d 914, 921, 92 Cal.Rptr. 288, 293, 479 P.2d 648, 653 (1971). New York, on the other hand, seems to permit all such actions, except those arising out of a parent's failure to properly supervise the child. Under New York law, parents owe no legal duty to their children to supervise them properly. *Holo-dook v. Spencer,* 36 N.Y.2d 35, 51, 364 N.Y.S.2d 859, 870–72, 324 N.E.2d 338, 346 (1974).

■ Despite the majority trend, even those most critical of the rule must acknowledge that its abrogation is not a panacea. At least with respect to motor tort cases, the argument for abrogation suffers from several infirmities.

In a normal case, liability insurance becomes relevant only *after* an insured's liability is fixed in an appropriate legal proceeding. Yet as between parent and child, it becomes the *raison d'être* of the suit. Thus, unlike a true adversarial proceeding, an insurer is forced into the unenviable position of attempting to defend a suit that its insured has every incentive to lose.[14]

■ This, of course, inevitably leads the trier of fact to realize that the suit targets not the parent or child (to whom immunity would otherwise attach) but rather the insurance company. Maryland follows the majority rule that evidence of liability insurance on the part of a defendant is generally inadmissible. *Allstate Ins. Co. v. Atwood,* 319 Md. 247, 258, 572 A.2d 154 (1990); *see also Allstate Ins. Co. v. Miller,* 315

---

14. In this context, Justice Shepard of the Supreme Court of Idaho has observed with respect to his court's decision to abrogate the parent-child immunity doctrine in motor tort cases because of mandatory automobile liability insurance that

"[t]he reason family members are less likely to experience disharmony over the lawsuit is that they will be more likely to agree on liability. A parent is more likely to admit to negligence, whether or not it is true, when the insurance coverage of the parent's child is involved."

*Farmers Ins. Group v. Reed,* 109 Idaho 849, 857, 712 P.2d 550, 558 (1985)(Shepard, J., dissenting).

Md. 182, 191, 553 A.2d 1268, 1272 (1989); *Jones v. Federal Paper Bd. Co.*, 252 Md. 475, 494–95, 250 A.2d 653, 664 (1969); *Snowhite v. State*, 243 Md. 291, 301, 221 A.2d 342 (1966); *Takoma Park Bank v. Abbott*, 179 Md. 249, 263, 19 A.2d 169, *cert. denied*, 314 U.S. 672, 62 S.Ct. 134, 86 L.Ed. 538 (1941). This policy stems from the fact that the matter of insurance is irrelevant to the issue of a defendant's liability and evidence of that irrelevant fact is highly prejudicial to the defendant's case. *Morris v. Weddington*, 320 Md. 674, 680, 579 A.2d 762, 765 (1990)(quoting *Atwood, supra*, 319 Md. at 258, 572 A.2d at 159). Yet the insurance justification for abrogation of the parent-child immunity doctrine in motor tort cases ignores the practical considerations associated with this policy. Indeed, at least one commentator has acknowledged that "[a]n insurance underwriter may experience ... problems in defending an intra-family tort claim." *See* Comment, *Parent Child Immunity: Time for Maryland to Abrogate an Anachronism*, 11 U.Balt.L.Rev. 435, 464–65 (1982).

It is a common experience in many courts that a jury's generosity is proportional to the amount of available insurance. Although it has been suggested that informing juries prior to deliberations that unjustly high awards affect insurance rates universally, *see id.* at 466, that warning instructs jurors to consider cautiously an issue they ought not to consider at all.

Also, the insurance-based argument in favor of abrogation fails to assess the consequences of an award that exceeds available coverage.[15] Is the child then to proceed against the assets of the family? If that is so, it is hard to believe that the rancor and discord the insurance is said to obviate would not find its way back into the mix. While denying an "injured child access to the courts, and through them any liability

---

15. In light of the commonly used "household exclusion" in automobile insurance policies, this circumstance is likely to occur. *See State Farm Mut. v. Nationwide Mut.*, 307 Md. 631, 642–43, 516 A.2d 586, 592 (1986)(household exclusion clause in automobile liability insurance policy invalid to extent of minimum statutory liability coverage, but otherwise valid and enforceable for exclusions above that minimum).

insurance the family ... maintain[s] [might not] aid family reconciliation," *see Sorensen, supra,* 369 Mass. at 360, 339 N.E.2d at 913, the same can be said of handing an injured child a large damage award and allowing him or her to ravage a family through further collection proceedings. Either way, the family suffers. And even assuming that a child's recovery is limited to the amount of available insurance, the argument that his or her recovery should be no different than that of any person negligently injured once again takes center stage.

Further, many families carry medical insurance that would necessarily compensate the injured child, and therefore, his or her family, for injury-related expenses. Allowing children then to proceed to court and recover for pain and suffering and other noneconomic damages, which often far exceed medical costs, might potentially saddle a family with a judgment that they can ill-afford to pay because, as previously indicated, it exceeds available insurance.

Finally, Justice Lee of the Supreme Court of Mississippi cogently observed that many of the arguments against parent-child immunity

> "impl[y] that a child injured by the negligence of a parent is adrift in our current system with no rights of all.... [T]ort law cannot erase physical injuries or soothe human suffering. It can only insure that injured parties are compensated. [P]arents already have the legal responsibility of providing care for their children.... A policy of immunity in no way detracts from the seriousness of the issue of parental neglect or other forms of abuse. The proper remedy for these injuries, however, is eternal vigilance on the part of individuals and government agencies and vigorous enforcement of criminal statutes."

*Glaskox, supra,* 614 So.2d at 916 (Lee J., dissenting).

In light of the foregoing observations and on balance, we remain convinced that the parent-child immunity rule "is still in the best interests of both children and parents to retain ... [and that] [a]brogating immunity would result only in further discord within the family and would interfere with the exercise

of parental discretion in raising and disciplining children." *Warren*, 336 Md. at 626, 650 A.2d at 255.

### c.

Renko lastly contends that the parent-child immunity doctrine as applied in motor vehicle torts is "irrational and arbitrary and violates Articles 19[16] and 24[17] of the Maryland Declaration of Rights, and the Equal Protection and Due Process Clauses of the [Fourteenth Amendment to the] United States Constitution.[18]" We find these assertions to be meritless.

■ With respect to her contention that denying a minor child access to the courts for injuries sustained at the hands of a negligent parent violates the injured child's due process rights, *Johnson v. Maryland State Police*, 331 Md. 285, 628 A.2d 162 (1993) is dispositive. In *Johnson*, we considered the constitutional validity of an administrative claim requirement under the Maryland Tort Claims Act. *See* Md.Code (1995 Repl.Vol., 1996 Supp.), §§ 12–101, *et seq.* of the State Government Article. In so doing, we could not "agree [with the Petitioner's assertion] that there is a constitutionally protected vested property right in a particular cause of action." *Johnson*, 331 Md. at 298–99, 628 A.2d at 168; *see also Murphy v.*

---

**16.** Article 19 of the Maryland Declaration of Rights provides:

"That every man, for any injury done to him in his person or property, ought to have remedy by the course of the Law of the land, and ought to have justice and right, freely without sale, fully without any denial, and speedily without delay, according to the Law of the land."

**17.** Article 24 of the Maryland Declaration of Right provides:

"That no man ought to be taken or imprisoned or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or, in any manner, destroyed, or deprived of his life, liberty or property, but by the judgment of his peers, or by the Law of the land."

**18.** The Fourteenth Amendment to the United States Constitution provides in relevant part:

"No State [shall] deprive any person of life, liberty, or property, without due process of law; nor deny any person within its jurisdiction the equal protection of the laws."

*Edmonds,* 325 Md. 342, 362–63, 601 A.2d 102, 112 (1992). Renko therefore states no cognizable claim under either Article 24 of the Maryland Declaration of Rights or the Due Process Clause of the Fourteenth Amendment. *See Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 569–70, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548, 556–57 (1972)(in order to assert a due process claim, individual must have property or liberty interest protected by the Fourteenth Amendment); *see also Livingston v. State,* 317 Md. 408, 410, 564 A.2d 414, 415–16 (1989); *Pitsenberger v. Pitsenberger,* 287 Md. 20, 27, 410 A.2d 1052, 1056 (1980)(Art. 24 of the Maryland Declaration of Rights construed *in pari materia* with Fourteenth Amendment to the United States Constitution); *accord Oursler v. Tawes,* 178 Md. 471, 483, 13 A.2d 763, 768 (1940).

■   Renko's equal protection claim suffers a similar analysis. Although Article 24 does not contain an express equal protection clause, the concept of equal protection nevertheless is embodied in the Article. *See State Admin. Bd. of Election Laws v. Board of Supervisors,* 342 Md. 586, 595 n. 6, 679 A.2d 96, 100 n. 6 (1996); *Gilchrist v. State,* 340 Md. 606, 623 n. 3, 667 A.2d 876, 884 n. 3 (1995); *Ashton v. Brown,* 339 Md. 70, 101 n. 17, 660 A.2d 447, 462 n. 17 (1995); *Verzi v. Baltimore County,* 333 Md. 411, 417, 635 A.2d 967, 969–970 (1994). In that regard, federal equal protection decisions are illustrative. *Tyler v. State,* 330 Md. 261, 264–65, 623 A.2d 648, 650 (1993). Even so, we have found neither State nor federal authority supportive of Renko's position, and she cites none.

■   Renko maintains that the common law parent-child immunity doctrine impermissibly discriminates against her and others similarly situated based upon age and familial status. Neither, however, is a "suspect class" under traditional equal protection jurisprudence.[19]   *Massachusetts Bd. of*

---

19.   We find this assertion curious in light of Renko's contention that the "proper" result in this case is to "permit emancipated children to maintain actions against a parent (at least for auto torts) committed by a parent after the minor turns [sixteen] years of age." Although such a result would obviously benefit her cause, she offers no explanation why

*Retirement v. Murgia,* 427 U.S. 307, 312, 96 S.Ct. 2562, 2566, 49 L.Ed.2d 520, 524–25 (1976); *accord In re Trader,* 272 Md. 364, 397, 325 A.2d 398, 415–16 (1974)(age). *See also Lyng v. Castillo,* 477 U.S. 635, 638, 106 S.Ct. 2727, 2729, 91 L.Ed.2d 527, 533 (1986)(familial relationship). Thus, even assuming, without deciding, that the common law doctrine of parent-child immunity is subject to constitutional attack, we must determine if the classifications of which Renko complains bear any reasonable or rational relation to the objectives of the rule. *See Kirsch v. Prince George's County,* 331 Md. 89, 104, 626 A.2d 372, 379 (1993). Under this analysis, the parent-child immunity doctrine

"can be invalidated only if the classification is without any reasonable basis and is purely arbitrary. Further, a classification having some reasonable basis need not be made with mathematical nicety and may result in some inequality. If any state of facts reasonably can be conceived that would sustain the clarification, the existence of that state of facts at the time the law was [adopted] must be assumed."

*Whiting-Turner Contract. Co. v. Coupard,* 304 Md. 340, 352, 499 A.2d 178, 185 (1992).

For the reasons articulated in Part II of this opinion and exhaustively explained in *Warren* and *Frye, supra,* we conclude that the parent-child immunity doctrine survives the rational basis standard of review. We continue to believe that the doctrine well serves the citizens of this State by insulating families from the vagaries and rancorous effects of tort litigation. That it may occasion undesirable consequences is quite irrelevant. " 'To be able to find fault with a law is not to demonstrate its invalidity. It may seem unjust and oppressive, yet be free from judicial interference. The problems of government are practical ones and may justify, if they do not require, rough accommodations, illogical, it may be, and unscientific.' " *In re Trader, supra,* 272 Md. at 399, 325 A.2d at

the line she draws is any less arbitrary or capricious then the age of majority currently set by the Legislature in Md.Code (1957, 1996 Repl.Vol.), Art. 1, § 24(a).

416–17 (quoting *Metropolis Theatre Co. v. City of Chicago,* 228 U.S. 61, 69–70, 33 S.Ct. 441, 443, 57 L.Ed. 730, 734 (1913)).

Similarly, although we have held that "Article 19 does guarantee access to the Courts ... [,] that access is subject to reasonable regulation." *Edmonds, supra,* 325 Md. at 365, 601 A.2d at 113. In light of the fact that parents are charged with the "support, care, nurture, and welfare" of their children, *see* n.8, *supra,* Maryland law has long recognized, save for extraordinary circumstances, that the parent-child immunity doctrine is a reasonable and well-founded limitation upon a child's access to our courts, serving to protect one of the most fundamental and sacred units in our society.

*JUDGMENT AFFIRMED, WITH COSTS.*