849 A.2d 539

Jay H. STEARMAN, et al.

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY.

No. 67, Sept. Term, 2003.

Court of Appeals of Maryland.

May 14, 2004.

**438**

Andrew Janquitto (Mudd, Harrison & Burch, Towson; Bruce M. Plaxen, Plaxen & Adler, P.A., Columbia, on brief), for appellants/cross-appellees.

Michael J. Budow (Richard E. Schimel, Laura Basem Jacobs, Budow and Noble, P.C., on brief), Bethesda, for appellee/cross-appellant.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA, and GREENE, JJ.

GREENE, Judge.

Jay Stearman and Carla Stearman are married. On June 5, 2002, Mrs. Stearman suffered serious injuries as a result of an accident that occurred while she was passenger in a vehicle driven by Mr. Stearman. Mrs. Stearman sued State Farm Mutual Automobile Insurance Company and Mr. Stearman in the Circuit Court for Baltimore County. Mrs. Stearman alleged that her husband's negligence caused her injuries. She and Mr. Stearman both sought a declaration that the household exclusion in State Farm's auto liability insurance policy was invalid. The trial court heard argument on the motions on July 28, 2003, and granted State Farm's motion for summary judgment, declaring that the household exclusion was valid. The Stearmans noted their appeal and cross-appeal on August 7, 2003. Thereafter, Mr. Stearman filed a petition for writ of certiorari, which this Court granted before the Court of Special Appeals heard the case. *Stearman v. State Farm*, 377 Md. 111, 832 A.2d 204 (2003).

■ The issue before the Court is the validity of a household exclusion that reduces the limit of liability in an auto insurance policy to the statutory minimum amount, if that policy otherwise provides liability coverage in excess of the statutory minimum liability limits. We hold that the exclusion is valid.

### FACTS

As a result of the June 5, 2002 collision, Mrs. Stearman suffered serious injuries, including a broken rib, a broken

collar bone, and a collapsed lung. The only vehicle involved in the collision was the vehicle driven by Mr. Stearman. Mrs. Stearman alleges that her husband's negligence caused the collision and her injuries.

At the time of the collision, appellant and his wife were both insured by State Farm under an automobile policy that obligates State Farm to pay "damages which an insured becomes legally liable to pay because of bodily injury to others ... caused by accident resulting from the ownership, maintenance or use" of an insured vehicle. The declarations page of the policy provides for $100,000 per person of bodily injury liability coverage.

The policy also includes the following language under the Liability Coverage section of the policy:

**Who is an Insured**

When we refer to *your car, a newly acquired car* or a *temporary substitute car, insured* means:

1. *you;*
2. *your spouse;*
3. the *relatives* of the first *person* named in the declarations;
4. any other *person* while using such a *car* if its use is within the scope of consent of *you* or *your spouse;* and
5. any other *person* or organization liable for the use of such a *car* by one of the above *insureds.*

(Emphasis in the original.) [1]

The policy also included the following restriction on coverage:

**When Coverage Does Not Apply.**

In addition to the limitations of coverage in **Who is an Insured** and **Trailer Coverage:**

THERE IS NO COVERAGE:

* * *

2. FOR ANY *BODILY INJURY* TO:

---

1. In the policy, defined words are printed in boldface italics.

**440**

c. ANY *INSURED* OR ANY MEMBER OF AN *IN-SURED'S* FAMILY RESIDING IN THE *IN-SURED'S* HOUSEHOLD TO THE EXTENT THE LIMITS OF LIABILITY OF THIS POLICY EX-CEED THE LIMITS OF LIABILITY REQUIRED BY LAW.

(Emphasis in original.)

## DISCUSSION

The Stearmans argue that State Farm's attempt to reduce liability coverage from the stated policy amount of $100,000 per person to the statutory limit of $20,000 per person is unsuccessful because such a restriction is invalid and void as against public policy. State Farm, however, asserts that this Court's decision in *State Farm Mut. Auto. Ins. Co. v. Nationwide Mut. Ins. Co.*, 307 Md. 631, 516 A.2d 586 (1986), invalidated household exclusions that attempted to exclude coverage *below* the statutory minimums, but also validated household exclusions that provided coverage *above* the statutory minimum. We agree with State Farm's position.

Prior to *State Farm v. Nationwide*, however, this Court decided *Jennings v. Government Employees Insurance Company*, 302 Md. 352, 488 A.2d 166 (1985). In *Jennings*, we held that a household exclusion clause in an automobile liability insurance policy was invalid because the clause was contrary to the public policy as embodied in the compulsory automobile insurance requirements. *Id.* at 357, 488 A.2d at 168. The household exclusion in the policy in that case excluded *all* liability coverage for injury to the insured and members of his household. *Id.* at 354, 488 A.2d at 167. The insured, Jennings, was a passenger in an automobile owned by him and operated by his stepson at the time of Jennings's injuries. *Id.* at 353–54, 488 A.2d at 167.

Jennings sued his stepson and obtained a default judgment in the amount of $100,000. *Id.* at 354, 488 A.2d at 167. Jennings then brought a declaratory judgment action against

GEICO, seeking to establish that GEICO must pay the judgment that Jennings obtained against his stepson. *Jennings*, 302 Md. at 354, 488 A.2d at 167. Jennings contended that the household exclusion was void because it was contrary to statute. *Id.* Both sides filed motions for summary judgment and the circuit court granted GEICO's motion. *Id.* at 354–55, 488 A.2d at 167. Jennings appealed, and, prior to the argument in the Court of Special Appeals, this Court granted *certiorari.* *Id.* at 355, 488 A.2d at 167.

We noted, generally, that any clause in an insurance policy that is contrary to the public policy of this State, as set forth in any statute, is invalid and unenforceable. *Id.* at 356, 488 A.2d at 168. We concluded, specifically, that the household exclusion clause in *Jennings* violated the public policy embodied in the 1972 General Assembly's action to require compulsory automobile insurance for all Maryland automobiles, with specific mandatory minimum coverage amounts.[2] *Jennings*, 302 Md. at 357, 488 A.2d at 168. The General Assembly expressly authorized certain exclusions from mandatory coverage in the statutory provisions enacted in 1972. *Id.* at 358, 488 A.2d at 169. The household exclusion was not among those expressed by the Legislature, and, consequently, we stated that we "will not insert exclusions from the required coverages beyond those expressly set forth by the Legislature." *Id.* at 358–59, 488 A.2d at 169. Such an exclusion would be " 'contrary to the remedial legislative purpose of assuring compensation for damages to victims of motor vehicle accidents. . . .' " *Id.* at 359, 488 A.2d at 169 (quoting *Pennsylvania Nat'l Mut. v. Gartelman*, 288 Md. 151, 156, 416 A.2d 734

---

2. As noted by Judge Eldridge in *Jennings*,

By Ch. 73 of the Acts of 1972, as supplemented by later statutes such as Ch. 562 of the Acts of 1975, primarily codified in §§ 17–101 through 17–110 of the Transportation Article, and §§ 234B, 240AA through 242, 243 through 243L, 539 through 547 of the Insurance Code (Art. 48A), the General Assembly mandated that all Maryland automobiles ... be covered by automobile insurance policies containing certain types of required coverages.

(1980) (invalidating an insurance policy provision that excluded an insured from PIP coverage)).

We emphasized that "[w]hile many exclusions in automobile insurance policies do not conflict with legislative policy and are therefore valid, the so-called household exclusion from *compulsory* automobile liability insurance does not fall into such a category." *Jennings*, 302 Md. at 362, 488 A.2d at 171 (emphasis added). *Jennings* invalidated a provision of a policy that excluded an insured from all liability coverage. It did not address the question of whether such a household exclusion would be valid above mandatory minimum coverage requirements. That question was resolved by this Court in *State Farm Mut. Auto. Ins. Co. v. Nationwide Mut. Ins. Co.*, 307 Md. 631, 516 A.2d 586 (1986).

In *State Farm*, we addressed whether a household exclusion was "wholly invalid, or whether its invalidity extends only to the amount of the minimum liability coverage required by the compulsory insurance law." *Id.* at 633, 516 A.2d at 586–87. We concluded that such an exclusion was invalid to the extent of the statutory limits. *Id.* at 633, 516 A.2d at 587.

In *State Farm*, State Farm Mutual Automobile Insurance Company insured Carroll, who suffered injuries as a result of an accident that took place when he was a passenger in his own insured vehicle. *Id.* A friend of Carroll's, named Glass, drove the vehicle off the road and it overturned, killing Glass and another passenger, and injuring Carroll. *Id.* Carroll sued Glass's estate. *State Farm*, 307 Md. at 634, 516 A.2d at 587. Glass had been insured by Nationwide Mutual Insurance Company and her policy insured her against liability for any accident involving her use of a motor vehicle belonging to someone who, like Carroll, was not a member of her household. *Id.* at 633–34, 516 A.2d at 587. Carroll's policy included liability coverage of $100,000 per person and $300,000 per accident. *Id.* at 633, 516 A.2d at 587. Carroll's policy also excluded coverage for injury to "any insured or any member of an insured's family residing in the insured's household." *Id.*

Nationwide sought a declaration that the household exclusion in State Farm's policy was void as against public policy. *Id.* at 634, 516 A.2d at 587. State Farm argued that the exclusion was valid. *State Farm,* 307 Md. at 634, 516 A.2d at 587. As noted in *State Farm,* while that case was pending in the circuit court, this Court decided *Jennings,* in which we decided that a household exclusion that eliminated *all* liability coverage was invalid. *Id.* at 634, 516 A.2d at 587. Consequently, State Farm and Nationwide agreed that *Jennings* eliminated State Farm's argument that the exclusion in this case was valid *below* the statutory minimum personal injury coverage of $20,000 per person and $40,000 per incident, required by section 17–103(b)(1) of the Transportation Article. *Id.* Nonetheless, State Farm maintained that the exclusion should be considered valid *above* the statutory minimum requirements. *Id.* at 635, 516 A.2d at 587.

To answer the question raised in *State Farm,* this Court discussed *Jennings* and its review of the history of the treatment of household exclusions. *Id.* at 635, 516 A.2d at 588. We also noted that, before 1972, Maryland upheld the validity of exclusions that were not precluded by statute. *State Farm,* 307 Md. at 635, 516 A.2d at 588. Beginning in 1972, the General Assembly changed the public policy of the State by mandating compulsory automobile insurance with minimum coverage amounts.[3] *Id.*

We noted that *Jennings* spoke in "broad terms" about the invalidity of the household exclusion in that case "because of its violation of the statutory compulsory liability insurance policy." *Id.* at 636, 516 A.2d at 588. We concluded, however, that while *Jennings* did not deal specifically with the question before the Court in *State Farm,* the reasoning in *Jennings* supported State Farm's argument that excluding household

---

**3.** Section 19–504 of the Insurance Article states that each motor vehicle liability insurance policy issued, sold, or delivered in the State *"shall* provide the minimum liability coverage specified in Title 17 of the Transportation Article."* (Emphasis added.) Section 17–103(b)(1) of the Transportation Article requires minimum liability coverage for bodily injury or death of $20,000 per person and $40,000 per accident.

liability coverage above the minimums required by statute does not violate public policy. *Id.* at 636–37, 516 A.2d at 588–89.

> Put simply, what the legislature has prohibited is liability coverage of less than the minimum amounts required by § 17–103(b)(1) of the Transportation Article.... The "household exclusion" violates public policy only to the extent that it operates to prevent this mandatory minimum coverage.

*Id.* at 637, 516 A.2d at 589.

■ The purpose of the Maryland compulsory insurance statutes is to " '[assure] recovery for innocent victims of motor vehicle accidents.' " *State Farm,* 307 Md. 631 at 639, 516 A.2d at 590 (quoting *State Farm Mut. Auto. Ins. Co. v. Maryland Auto. Ins. Fund.,* 277 Md. 602, 604, 356 A.2d 560, 562 (1976)). Nonetheless, we stated in *State Farm* that we "do not view that purpose as extending beyond the prescribed statutory minimum coverage, so far as the 'household exclusion' is concerned." *Id.* at 640, 516 A.2d at 590.[4] Succinctly stated, the public policy in question in *State Farm* and in the case at bar is

> that all automobile liability policies shall contain bodily injury or death liability coverage in at least the amount of $20,000/$40,000. To permit the "household exclusion" to operate within those limits would be to "deprive injured persons of the protection which the Legislature intended to provide," *Keystone Mut. Cas. Co. v. Hinds,* 180 Md. 676, 682, 26 A.2d 761, 763 (1942), and would violate public policy.
>
> \* \* \*
>
> We hold, therefore, that the "insured" segment of a "household exclusion" clause in an automobile liability insurance policy is invalid to the extent of the minimum statutory liability coverage. So far as the public policy evidenced by

---

4. Without repeating all the citations recorded in *State Farm,* we also note that "[t]he majority of jurisdictions that squarely address the issue before us has reached a result consistent with ours in this case." *State Farm,* 307 Md. at 641, 516 A.2d at 591.

the compulsory insurance law is concerned, it is a valid and enforceable contractual provision as to coverage above that minimum.

*Id.* at 643, 644, 516 A.2d at 592.[5]

Despite the clear holding in *State Farm,* the Stearmans contend that the holding is "limited to the facts of that case and is not a general validation of exclusions above statutory minimum required limits." [6] While we would agree that *State Farm* is not a "general validation" of *any* exclusion above a statutory minimum, we think it quite clear that the case does validate *household* exclusions above those minimums.

In support of their arguments, the Stearmans cite *West American Insurance Co. v. Popa,* 352 Md. 455, 723 A.2d 1 (1998). In that case, we invalidated insurance policy provisions that excluded vehicles owned or operated by a self-insurer or by any governmental unit or agency from the definition of uninsured/underinsured vehicles. *Id.* at 474, 723 A.2d at 10. In support of that holding, we stated that "this Court has consistently held that exclusions from statutorily

---

**5.** Similarly, we have very recently noted, in *Salamon v. Progressive Classic Insurance Company,* 379 Md. 301, 841 A.2d 858 (2004), that "under Maryland's compulsory automobile insurance statute, contractual exclusions in automobile insurance policies that excuse or reduce benefits below the minimum statutorily required levels or types of coverage, and are not expressly authorized by the General Assembly, are invalid." *Salamon,* 379 Md. at 303, 841 A.2d at 860 (2004). We also stated that "the requirement that every driver maintain at least these minimum levels of motor vehicle insurance remains an integral part of Maryland statutory law and public policy. Any portion of a motor vehicle insurance policy that is inconsistent with this statutory scheme is void and unenforceable." *Salamon,* 379 Md. at 311, 841 A.2d at 864–65 (2004) (citing *Lewis v. Allstate Ins. Co.,* 368 Md. 44, 47, 792 A.2d 272, 274 (2002)). Finally, we declared that "we shall not uphold any exclusion, not authorized by the General Assembly, that excuses or reduces benefits below the statutory minimums." *Salamon,* 379 Md. at 315, 841 A.2d at 867 (2004). *Salamon* invalidated the so-called "pizza exclusion," which purports to deny coverage if an insured driver was delivering "property for compensation" at the time of the accident. *Salamon,* 379 Md. at 304, 841 A.2d at 860 (2004).

**6.** Alternatively, the Stearmans argue that we should overrule *State Farm.*

mandated insurance coverage not expressly authorized by the Legislature generally will not be recognized." *Id.* at 475, 723 A.2d at 10.

Relying on *State Farm v. Nationwide,* West American argued, in the alternative, that in the event that the exclusions are invalidated, they are void only to the extent of the $20,000/$40,000 statutorily required minimum liability insurance limits. *West American Insurance Co. v. Popa,* 352 Md. at 476, 723 A.2d at 11. We rejected that argument and distinguished *State Farm* from *West American Insurance:*

> In *State Farm Mut. v. Nationwide, supra,* this Court held that a "household exclusion" to liability coverage in an automobile insurance policy was invalid only to the extent of the $20,000/$40,000 statutorily prescribed minimum liability coverage. The holding of the *State Farm Mut.* case, however, has not been applied by this Court to any other automobile insurance policy exclusions or provisions. Moreover, we have specifically declined to apply the *State Farm Mut.* holding in a context other than the household exclusion to liability coverage. *See Van Horn v. Atlantic Mutual [Ins. Co.], supra,* 334 Md. [669] at 694–696, 641 A.2d [195] at 207–208.

*Id.* at 477, 723 A.2d at 11–12. We also dismissed West American's suggestion that *any* exclusion above statutory minimum limits would be acceptable:

> Adoption of the broad proposition advanced by West American would permit insurers to load up motor vehicle insurance policies with a multitude of invalid exclusions, thereby limiting coverage in numerous situations to the statutory minimums instead of the stated coverage limits set forth on the insured's declaration page.
>
> * * *
>
> Persons who paid much more in premiums for coverage in excess of minimums could, in many circumstances, receive no more than those who only paid for minimum coverages. Consequently, we decline to extend the holding of *State*

*Farm Mut. v. Nationwide, supra,* beyond the household exclusion clause which was involved in that case.

*West American Insurance Co. v. Popa,* 352 Md. at 477, 723 A.2d at 12.

In *West American Insurance,* we refused to extend the holding of *State Farm* to a case involving uninsured motorist exclusions.[7] It is equally clear that the holding of *State Farm Mut. v. Nationwide* is applicable to *other household exclusion* cases, like the one currently before the Court. The Stearmans's argument to the contrary is simply not persuasive. As summarized in *Van Horn v. Atlantic Mutual Insurance Company,* 334 Md. 669, 694–95, 641 A.2d 195, 207 (1994):

> In *State Farm Mut. v. Nationwide Mut., supra,* this Court reaffirmed its earlier holding in *Jennings v. Government Employees Ins., supra,* 302 Md. 352, 488 A.2d 166, that a "household exclusion" clause in an automobile liability insurance policy was contrary to the public policy embodied in Maryland's compulsory motor vehicle insurance law. We went on in *State Farm,* however, to hold that the household exclusion clause was invalid only to the extent of the statutorily prescribed minimum liability coverage of $20,000/$40,000. We pointed out that it could "readily be inferred that the premium took account of the exclusion contained in the policy" (307 Md. at 638, 516 A.2d at 589), that the majority of compulsory insurance jurisdictions had invalidated household exclusion clauses only to the extent of the statutorily prescribed mandatory minimum liability coverage (307 Md.

---

7. We noted that *West American Insurance* was a "particularly inappropriate" case in which to apply the holding of *State Farm* because "the statutorily required minimum uninsured/underinsured coverage which an insurer must offer is not $20,000/$40,000. Instead, an insurer must offer an amount of uninsured/ underinsured coverage equal to the liability coverage provided for in the policy." *West American Insurance Co. v. Popa,* 352 Md. at 477–78, 723 A.2d at 12. In effect, then, if a person has only the minimum liability coverage of $20,000/$40,000, his or her uninsured/underinsured coverage would have to be that same amount. If that person had liability coverage in a greater amount, however, the insurance company would have to offer uninsured/underinsured coverage in the same amount.

at 641–43, 516 A.2d at 591–592), and that "[a]s a general rule, parties are free to contract as they wish" (307 Md. at 643, 516 A.2d at 592).

The Stearmans also argue that Section 19–502(b) of the Insurance Article evidences a legislative intention that automobile insurance policies that provide liability coverage in excess of the statutory minimums must not exclude that level of coverage in any situation. We do not see how the language cited declares such an intention. The statute provides:

*On amount of liability coverage provided by insurer.—* Neither this subtitle nor Title 17 of the Transportation Article prevents an insurer from issuing, selling, or delivering motor vehicle liability insurance policies that provide liability coverage in excess of the requirements of the Maryland Vehicle Law.

Md.Code (1997, 2002 Repl. Vol.) § 19–502(b) of the Insurance Article. The plain language of the quoted section evidences an intention *to permit* insurance companies to offer policies that contain greater coverage than that required by statute.[8] It certainly does not *require* insurance companies to provide coverage greater than that mandated by statute. Nor does it display a legislative intention to change the public policy embodied in the statutorily mandated minimum liability coverage requirements. The Stearmans have cited no Maryland case that supports such a position.

---

**8.** As noted by this Court in *Oaks v. Connors,* 339 Md. 24, 35, 660 A.2d 423, 429 (1995):

The cardinal rule of statutory interpretation is to ascertain and effectuate the intention of the legislature. *Fish Market v. G.A.A.,* 337 Md. 1, 8, 650 A.2d 705 (1994). *See also Jones v. State,* 336 Md. 255, 260, 647 A.2d 1204 (1994); *Parrison v. State,* 335 Md. 554, 559, 644 A.2d 537 (1994); *Rose v. Fox Pool,* 335 Md. 351, 358, 643 A.2d 906 (1994). The first step in determining legislative intent is to look at the statutory language and "[i]f the words of the statute, construed according to their common and everyday meaning, are clear and unambiguous and express a plain meaning, we will give effect to the statute as it is written." *Jones, supra,* 336 Md. at 261, 647 A.2d 1204. *See also Parrison, supra,* 335 Md. at 559, 644 A.2d 537; *Rose, supra,* 335 Md. at 359, 643 A.2d 906; *Outmezguine v. State,* 335 Md. 20, 41, 641 A.2d 870 (1994).

They argue, however, that the remedial nature of Maryland's comprehensive motor vehicle insurance scheme (that of assuring compensation for damages to victims of motor vehicle accidents, as noted in *Jennings,* 302 Md. at 359, 488 A.2d at 169), must be given "a liberal construction to effectuate its purpose." Even employing a "liberal construction" of Section 19–502(b), we cannot construe it to mean what the Stearmans suggest. To do so would be illogical and unreasonable. *See Greco v. State,* 347 Md. 423, 429, 701 A.2d 419, 422 (1997) (noting that our goal is to give statutes their "most reasonable interpretation, in accord with logic and common sense, and to avoid a construction not otherwise evident by the words actually used"); *Frost v. State,* 336 Md. 125, 137, 647 A.2d 106, 112 (1994) (stating that we will avoid constructions that are "illogical, unreasonable, or inconsistent with common sense").

As we noted previously, the purpose of the Maryland compulsory insurance statutes is to " '[assure] recovery for innocent victims of motor vehicle accidents.' " *State Farm,* 307 Md. at 639, 516 A.2d at 590 (quoting *State Farm Mut. Auto. Ins. Co. v. Maryland Auto. Ins. Fund.,* 277 Md. 602, 604, 356 A.2d 560, 562 (1976)). Despite the allure of the idea of total compensation for any innocent victim of a motor vehicle accident, there is no indication that the General Assembly's purpose in enacting the compulsory insurance statutes was to assure *complete insurance* recovery for all victims.[9] As we

---

9. By contrast, in Delaware, the public policy is different:

> The public policy of Delaware's Financial Responsibility Laws favors *full compensation* to all victims of automobile accidents. The General Assembly intended for that public policy to be implemented by affording opportunities for acquiring more than the statutorily mandated minimum amount of automobile insurance coverage. Nationwide's modified household exclusion is inconsistent with the statutory purpose of encouraging the Delaware driving public to purchase more than the statutory minimum amount of automobile insurance coverage.

*Nationwide Gen. Ins. Co. v. Seeman,* 702 A.2d 915, 918 (Del.1997) (emphasis added) (citations omitted). The Stearmans would like us to rely on *Seeman* to determine the outcome of this case. Our previous interpretations of Maryland public policy on this issue, however, do not

stated in *State Farm,* we "do not view that purpose as extending beyond the prescribed statutory minimum coverage, so far as the 'household exclusion' is concerned." *State Farm,* 307 Md. at 640, 516 A.2d at 590. Clearly, if the General Assembly had intended something closer to complete insurance recovery for all victims, they would have said so or increased the mandatory minimum liability limits.

The Stearmans argue that we should overrule *State Farm Mut. v. Nationwide.* They have not convinced us, however, that the public policy (regarding mandatory minimum liability insurance and household exclusions) has changed since *State Farm* was decided. Neither have they shown us why the reasoning in *State Farm* was flawed and should be overruled.

They do argue that *Bozman v. Bozman,* 376 Md. 461, 830 A.2d 450 (2003) and *Boblitz v. Boblitz,* 296 Md. 242, 462 A.2d 506 (1983), changed the public policy regarding interspousal immunity [10] and that as a result, we should rethink the public policy as outlined by the insurance statutes discussed in *State Farm.* The relevant change in the interspousal immunity doctrine occurred in 1983 (three years before *State Farm* and two years before *Jennings),* with the issuance of this Court's opinion in *Boblitz.* In that case, we partially abrogated the

---

agree with the public policy described in *Seeman.* Therefore, we are not persuaded to follow Delaware's resolution of the issue.

**10.** As we noted in *Bozman,* a complete statement of the rationale underlying this doctrine was provided in *Lusby v. Lusby,* 283 Md. 334, 338, 390 A.2d 77, 78–79 (1978), with attribution to Blackstone, (1 W. Blackstone, Commentaries, Book 1, Ch. 15, pp. 442, 443):

"By marriage, the husband and wife are one person in the law: that is, the very being of legal existence of the woman is suspended during the marriage, or at least is incorporated and consolidated into that of the husband: under whose wing, protection, and cover, she performs everything; and is therefore called in our law french a *feme-covert, foemina viro co-operta;* is said to be a *covert-baron,* or under the protection and influence of her husband, her *baron,* or lord; and her condition upon marriage is called *coverture* .... If the wife be injured in her person or her property, she can bring no action for redress without her husband's concurrence, and in his name, as well as her own: neither can she be sued without making the husband a defendant."

common law doctrine of interspousal immunity as to cases sounding in negligence. *Boblitz,* 296 Md. at 275, 462 A.2d at 522.

If the Court believed that such a change in common law required a declaration that household exclusions in liability automobile insurance policies should be completely invalidated, we could have done so in *State Farm* or *Jennings.*[11] Our holding in *Bozman,* which completely invalidated the doctrine of interspousal immunity (by taking away immunity for any kind of intentional tort), adds little to the analysis.

The question of whether the abrogation of interspousal immunity for cases sounding in negligence should change our view of household exclusions has not been directly before this Court. The Court of Special Appeals, however, has addressed the issue and decided that *Boblitz* did not demand the invalidation of household exclusions above the amounts required by statute. *Walther v. Allstate Insurance Company,* 83 Md.App. 405, 575 A.2d 339 (1990), *cert. denied,* 320 Md. 801, 580 A.2d 219 (1990). In that case, the Walthers made the same argument made by the Stearmans in the case at bar.

> Because Boblitz abolished interspousal immunity in negligence cases, the Walthers aver that the limitation on household claims imposed by the Maryland Financial Responsibility Law violates the public policy derived from Boblitz. The Walthers reason that the abrogation of interspousal immunity not only permits Mrs. Walther to sue her husband for all damages she sustained as a result of his negligence but to assert that because the Maryland Financial Responsibility Law prohibits them from recovering damages in excess of $20,000 it violates public policy. Overlooked by that simplistic argument is the fact that Mrs. Walther is not pre-

---

**11.** It does not appear from the opinions in *State Farm* or *Jennings* that anyone argued that the abrogation of interspousal immunity in *Boblitz* should be considered by the Court in its analysis of the validity of household exclusions in liability insurance policies. Nonetheless, this Court was clearly aware of *Boblitz* and could have used its reasoning to invalidate household exclusions, if it thought such a course were necessary or desirable.

cluded from recovering damages from her husband in excess of $20,000 but merely from obtaining more than $20,000 from her husband's insurance carrier, Allstate.

*Walther*, 83 Md.App. at 407, 575 A.2d at 340–41. We agree with the intermediate appellate court's reasoning on this question.

■ There is no question that public policy regarding whether spouses may sue each other has changed. The law is now crystal clear. Spouses can sue each other for anything that strangers could, with no fear that the defendant spouse will be permitted to raise interspousal immunity as a defense. *Bozman*, 376 Md. 461, 830 A.2d 450 (2003) (completing the abrogation of the doctrine, including for the first time, any type of intentional tort); *Boblitz*, 296 Md. 242, 462 A.2d 506 (1983) (abrogating the doctrine as to cases sounding in negligence); *Lusby v. Lusby*, 283 Md. 334, 335, 390 A.2d 77 (1978) (abrogating the doctrine where the conduct constituting the tort was "outrageous" and "intentional"). The question presented in the case at bar, however, is a different question altogether. The question is, who pays the judgment, the negligent spouse or the negligent spouse's insurance company? Does Maryland's change in public policy regarding the common law doctrine of interspousal immunity require the insurance company of the negligent spouse to pay for the recovery of the injured spouse, even though the contract between the negligent spouse and the insurance company provides that there will be no recovery above the statutorily required minimums? Such a contract provision is clearly allowable under the mandatory minimum requirements laid out by the Legislature.

We recognize that the public policy represented by the complete abrogation of the interspousal immunity doctrine could be viewed as a policy that conflicts with the public policy embodied in the mandatory minimum liability insurance requirements set by the Legislature. For example, as noted by this Court in *Bozman*, one of the underpinnings of the interspousal immunity doctrine was the notion that it prevented

collusive and fraudulent claims. *Bozman,* 376 Md. at 481, 830 A.2d at 462. We noted in *Boblitz,* that " 'it seems unjust to deny the claims of the many because of the potentiality for fraud by the few.' " *Boblitz,* 296 Md. at 268–69, 462 A.2d at 518–19, (quoting *Hack v. Hack,* 495 Pa. 300, 433 A.2d 859 (1981), in turn quoting *Immer v. Risko,* 56 N.J. 482, 267 A.2d 481, 488 (1970)). Similarly, the protection of the insurer from "collusive or cozy claims" has traditionally been the reason for household exclusions found in insurance policies. *State Farm Mutual Automobile Insurance Company v. Briscoe,* 245 Md. 147, 151, 225 A.2d 270, 271 (1967).[12]

Nonetheless, we think that the General Assembly, not the Court, is the appropriate body to reconcile those conflicting policies, in light of the fact that the policy directly at issue in this case is a result of statute in the first place.

There is no doubt that this Court had the power to abrogate the *common law* doctrine of interspousal immunity. *Bozman,* 376 Md. at 494, 830 A.2d at 470. Moreover, despite the value of the doctrine of *stare decisis* and the fact that " 'changes in decisional doctrine ordinarily should be left to the legislature,' " *Bozman,* 376 Md. at 492, 830 A.2d at 468 (quoting *Boblitz,* 296 Md. at 273, 462 A.2d at 521), we recognized in *Bozman* that it was "eminently wise" of this Court to abrogate a common law doctrine that had become an outmoded vestige of the past. *Bozman,* 376 Md. at 495, 830 A.2d at 470.

---

**12.** In addition, the idea that divorce and criminal courts provided adequate remedies for injuries to spouses provided another underpinning of the doctrine of interspousal immunity. *Bozman,* 376 Md. at 483, 830 A.2d at 463. In rejecting that idea as a good reason to keep the doctrine, we noted in *Boblitz* that criminal courts can punish and divorce may provide escape from abuse, but that cannot be " 'equated with a civil right to redress and compensation for personal injuries.' " *Boblitz,* 296 Md. at 267, 462 A.2d at 518 (quoting *Merenoff v. Merenoff,* 76 N.J. 535, 388 A.2d 951, 962 (1978)) (citations omitted). While it appears clear to us that the mere fact that a person has signed an insurance contract that does not permit *insurance* recovery for injury to one's spouse does not necessarily interfere with the injured spouse receiving compensation for injuries, we can see that keeping household exclusions in the face of the abrogation of interspousal immunity could appear inconsistent.

 By stark contrast, the public policy that the Stearmans urge us to change now is not a policy that has been developed by the courts through common law. Rather, it was an act of the Legislature that created the policy, and ordinarily only an act of the Legislature can change that policy.[13] As noted by this Court in *State ex rel. Sonner v. Shearin,* 272 Md. 502, 510, 325 A.2d 573, 578 (1974), "[w]hen the common law and a statute collide, the statute, if constitutional, controls." We will not invade the province of the General Assembly and rewrite the law for them, no matter how just or fair we may think such a new law or public policy would be. The formidable doctrine of separation of powers demands that the courts remain in the sphere that belongs uniquely to the judiciary— that of interpreting, but not creating, the statutory law. Article 8 of the Maryland Constitution declares "[t]hat the Legislative, Executive and Judicial powers of Government ought to be forever separate and distinct from each other; and no person exercising the functions of one of said Departments shall assume or discharge the duties of any other."

As we stated in *Harrison v. Montgomery County Board of Education,* 295 Md. 442, 460, 456 A.2d 894, 903 (1983),

> in considering whether a long-established common law rule—unchanged by the legislature and thus reflective of this State's public policy—is unsound in the circumstances of modern life, we have always recognized that declaration of the public policy of Maryland is normally the function of the General Assembly. . . .

The question in *Harrison* was whether the Court should modify the judicially-created doctrine of contributory negligence. *Id.* at 444, 456 A.2d at 894. The principle of leaving the creation of public policy to the Legislature is even stronger in a case such as the present one, where the public policy in question is one created by the Legislature in the first in-

---

13. If the legislative act in question were unconstitutional, the judiciary has the power to step in and declare it so. There is no contention in this case, however, that any constitutionally protected rights are at stake.

stance.[14] As discussed in *Harrison*, "[t]he rationale underlying these decisions [to refuse to abrogate a common law doctrine] is buttressed where the legislature has declined to enact legislation to effectuate the proposed change." *Harrison*, 295 Md. at 461–62, 456 A.2d at 904. The refusal of the Legislature to act to change a *legislatively* enacted public policy (as opposed to a common law one) provides even greater support for the Court to exercise restraint and refuse to step in and make the change, unless constitutional violations exist.

Therefore, it is important that we discuss the attempts in the General Assembly in the recent past to make the change the Stearmans urge us to make now. Every year since 2000, legislators have introduced bills in the General Assembly that would require insurance companies to offer insureds liability coverage for claims made by a family member in the same amount as the liability coverage purchased for claims made by a nonfamily member. None of these bills were enacted until this year, when the Governor signed Senate Bill 460 into law.[15]

---

**14.** As we stated in *Allstate Insurance v. Hart*, 327 Md. 526, 532–33, 611 A.2d 100, 103 (1992):

[I]t is clear from the *Jennings* and *State Farm* cases that the invalidity of household exclusion clauses in motor vehicle insurance policies is based entirely upon the specific statutory provisions mandating motor vehicle insurance, requiring particular coverages at specified minimums, authorizing some exceptions and exclusions, and generally not authorizing other exclusions from the required coverages. *Jennings* and *State Farm* do not support, and in fact reject, the notion that there is a public policy hostile to household exclusion clauses which extends beyond the scope of the statutorily required insurance coverages.

**15.** The language of the law requires an insurer to offer to the first named insured under a motor vehicle liability policy "liability coverage for claims made by a family member in the same amount as the liability coverage for claims made by a nonfamily member under the policy or binder." 2004 Md. Laws, Chap. 127. The case at bar is not affected by this new law, which by its own terms, will only apply to motor vehicle liability insurance policies or binders issued, delivered, or renewed on or after January 1, 2005. 2004 Md. Laws, Chap. 127, Section 3.

The new law also requires the Insurance Commissioner "to study the impact on motor vehicle liability insurance rates" as a result of requiring insurers to offer this coverage. The Commissioner must report the

This further evidences that the Legislature has recognized a need to act in this area and has chosen to do so. As stated in *Harrison,* "while we recognize the force of the plaintiff's argument, 'in the present state of the law, we leave any change in the established doctrine to the Legislature.'" *Harrison,* 295 Md. 442 at 463, 456 A.2d 894 at 905 (quoting *White v. King,* 244 Md. 348, 355, 223 A.2d 763, 767 (1966)).

In *Allstate Insurance v. Kim,* 376 Md. 276, 829 A.2d 611 (2003), we discussed the 2001 Act of the General Assembly abolishing the defense of parent-child immunity in a motor vehicle tort action. *Id.* at 281, 829 A.2d at 613. In discussing the history of the parent-child immunity doctrine in Maryland, we noted that:

> [w]e rejected several entreaties to add an additional exception for actions arising from motor torts, despite the existence of limited compulsory insurance in Maryland. *Frye v. Frye,* 305 Md. 542, 505 A.2d 826 (1986); *Warren v. Warren, supra,* 336 Md. 618, 650 A.2d 252 [(1994)]; *Renko v. McLean, supra,* 346 Md. 464, 697 A.2d 468 [(1997)]; *Eagan v. Calhoun, supra,* 347 Md. [72] at 81, 698 A.2d [1097] at 1102 [(1997)]. In *Frye and Warren,* we expressed the beliefs that exclusion of motor torts from the immunity doctrine would inevitably have some impact on the compulsory insurance program mandated by the Legislature and that, if an exception of that kind was to be made, it should "be created by the General Assembly after an examination of appropriate policy considerations in light of the current statutory scheme." *Frye, supra,* 305 Md. at 567, 505 A.2d at 839; *Warren, supra,* 336 Md. at 627, 650 A.2d at 257.

*Id.* at 282–83, 829 A.2d at 614. If we would not make an exception to the parent-child immunity doctrine for motor torts because of a recognition that to do so would impact the compulsory insurance laws, we see no reason why we should invade the province of the Legislature to affect the compulsory insurance laws as they relate to interspousal immunity.

---

findings to the General Assembly on or before January 10, 2008. 2004 Md. Laws, Chap. 127, Section 2.

It is interesting to note that when the Legislature acted in 2001 to abrogate the doctrine of parent-child immunity in motor tort actions, it did so within the limits of the mandatory minimum liability coverage amounts required by the Transportation Article. Section 5–806(b) of the Courts and Judicial Proceedings Article provides:

> The right of action by a parent or the estate of a parent against a child of the parent, or by a child or the estate of a child against a parent of the child, for wrongful death, personal injury, or property damage arising out of the operation of a motor vehicle ... may not be restricted by the doctrine of parent-child immunity or by any insurance policy provisions, up to the mandatory minimum liability coverage levels required by § 17–103(b) of the Transportation Article.

Md.Code (1974, 2002 Repl. Vol.), § 5–806(b) of the Courts and Judicial Proceedings Article. Contrary to the Stearmans' arguments that the current compulsory insurance laws display a public policy that would demand complete insurance coverage for injury to spouses, the Legislature did not see fit to provide complete insurance coverage for injury to children and parents. There is no reason to presume an undeclared public policy that is more favorable to husbands and wives than to children and parents. Nor can we assume that we misread the public policy when we decided *State Farm* and later cases that cited *State Farm*. We see no reason to overrule that case, especially in view of the fact that to do so in the way the Stearmans suggest would constitute an unlawful intrusion into the province of the Legislature.

JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY AFFIRMED. APPELLANT TO PAY ALL COSTS.

BELL, C.J., dissents and files opinion joined by BATTAGLIA, J.

BELL, Chief Judge, dissenting, joined BATTAGLIA, J.

It is well settled that the Maryland General Assembly has mandated that all Maryland automobiles be covered by poli-

cies of automobile insurance that contain certain required coverages. *See* Maryland Code (1977, 2002 Repl. Vol.), §§ 17–101 to 17–110 of the Transportation Article and Maryland Code (1995, 2002 Repl. Vol.), §§ 19–501 to 19–516 of the Insurance Article; *Jennings v. G.E.I.C.O.*, 302 Md. 352, 357, 488 A.2d 166, 167 (1985). Pertinent to this case, each automobile insurance policy minimally must include liability insurance for the "payment of claims for bodily injury or death arising from an accident of up to $20,000 for any one person and up to $40,000 for any two or more persons," § 17–103(b)(1) of the Transportation Article; § 19–504 of the Insurance Article, and property damage liability insurance of up to $10,000. § 17–103(b)(2) of the Transportation Article; § 19–504 of the Insurance Article.[1] Section § 19–502 of the Insurance Article, nevertheless, makes clear that "an insurer [is not prevented] from issuing, selling, or delivering motor vehicle liability insurance policies that provide liability coverage in excess of the requirements of the Maryland Vehicle Law." In this case, the insurance contract was for a face amount of liability coverage in excess of the statutorily required minimum amounts.

While insurance contracts may lawfully and appropriately exclude particular risks, this Court consistently has held that "exclusions from statutorily mandated, insurance coverage not expressly authorized by the Legislature generally will not be recognized. *See, e.g., Enterprise v. Allstate*, 341 Md. 541, 547, 671 A.2d 509, 512 (1996) ('Where the Legislature has mandated insurance coverage, this Court will not create exclusions that are not specifically set out in the statute'); *Van Horn v. Atlantic Mutual*, 334 Md. 669, 686, 641 A.2d 195, 203(1994) ('this Court has generally held invalid insur-

---

1. Other required coverages include, unless waived, medical, hospital, disability and funeral benefits ("P.I.P.") up to $2,500, covering insureds and their families, as well as specified classes of other persons, regardless of fault, Maryland Code (1977, 2002 Repl. Vol.), § 17–103(b)(3) of the Transportation Article; Maryland Code (1995, 2002 Repl. Vol.) § 19–505(a) of the Insurance Article, and uninsured motorist coverage, § 19–509 of the Insurance Article. Any permitted waiver of the PIP or uninsured motorist coverage must be accomplished pursuant to § 19–506 and § 19–510 respectively, of the Insurance Article.

ance policy limitations, exclusions and exceptions to the statutorily required coverages which were not expressly authorized by the Legislature'); *Allstate Ins. Co. v. Hart,* 327 Md. 526, 531–532, 611 A.2d 100, 102(1992); *Larimore v. American Ins. Co.,* 314 Md. 617, 622, 552 A.2d 889, 891 (1989); *Nationwide Mutual Ins. Co. v. USF & G,* 314 Md. 131, 141, 550 A.2d 69, 74 (1988); *Gable v. Colonial Ins. Co.,* 313 Md. 701, 704, 548 A.2d 135, 137 (1988) ('As a matter of statutory construction, where the Legislature has required specified coverages in a particular category of insurance, and has provided for certain exceptions or exclusions to the required coverages, additional exclusions are generally not permitted'); *Lee v. Wheeler,* 310 Md. 233, 239, 528 A.2d 912, 915 (1987) ('we will not imply exclusions nor recognize exclusions beyond those expressly enumerated by the legislature'); *Jennings v. Government Employees,* 302 Md. 352, 358–359, 488 A.2d 166, 169 (1985) ('we will not insert exclusions from the required coverages beyond those expressly set forth by the Legislature'); *Nationwide Mutual Ins. v. Webb,* [291 Md. 721, 730, 436 A.2d 465, 471 (1981)] ("conditions or limitations in an uninsured motorist endorsement, which provide less than the coverage required by the statute, are void"); *Pennsylvania Nat'l Mut. v. Gartelman,* 288 Md. 151, 160–161, 416 A.2d 734, 739 (1980)."

*West Am. Ins. Co. v. Popa,* 352 Md. 455, 475, 723 A.2d 1, 10–11(1998). *See also Salamon v. Progressive Classic Insurance Company,* 379 Md. 301, 303–304, 841 A.2d 858, 860 (2004).

The Court of Appeals, in *Boblitz v. Boblitz,* 296 Md. 242, 462 A.2d 506 (1983), abolished inter-spousal immunity in negligence cases.[2] In so holding, concluding that there was no "subsisting public policy" to justify retention of the doctrine, it rejected the reasons asserted in favor of that immunity as providing "no reasonable basis for denial of recovery for tortious personal injury." 296 Md. at 273, 462 A.2d at 521.

---

2. This Court has since completely abolished inter-spousal immunity. *Bozman v. Bozman,* 376 Md. 461, 830 A.2d 450 (2003) (abrogating inter-spousal immunity in intentional tort cases).

The necessary and, indeed, the only logical result, or significance, of the *Boblitz* decision was to place the injured spouse on an equal footing with strangers, *i.e.*, to permit one spouse to sue the other for negligence and to recover the damages to which he or she is entitled to the same extent as a stranger could. Significantly, the decision was not dependent upon the existence, or nonexistence, of insurance. Whether and, if so, how, the Maryland Financial Responsibility law would impact on inter-spousal suits in which insurance is a resource was not presented.

The foregoing must be kept in mind when the issue this case presents is considered. An issue of first impression for this Court,[3] it involves the validity of an household exclusion that reduces the amount of the recovery available to a wife injured in an automobile accident as a result of the negligence of her husband from the face amount of the husband's insurance policy to the statutory minimum liability limits. The policy of automobile liability insurance at issue in this case defines "insured" in terms of the insured car, a temporary replacement car or a newly acquired car and included the named insured's spouse. In addition, the coverage provided by the policy excludes

"ANY INSURED OR ANY MEMBER OF AN IN-SURED'S FAMILY RESIDING IN THE INSURED'S

---

**3.** The Court of Special Appeals has addressed the precise issue of "whether, in the light of the Court of Appeals decision in *Boblitz v. Boblitz*, 296 Md. 242, 462 A.2d 506 (1983), declaring invalid interspousal immunity, the circuit court erred 'in determining that the limit of liability for insurance coverage for claims by household members' is the amount 'required by the Maryland Financial Responsibility Law.'" *Walther v. Allstate Insurance Company*, 83 Md.App. 405, 406, 575 A.2d 339, 340 (1990). That court held, again precisely, "that the household exclusionary clause sanctioned by Md. Ann.Code art. 48A, § 545 [presently § 19–509(f) of the Insurance Article] applies to the named insured and all members of his, her, or their household to the extent that the policy coverage exceeds the statutory minimum," that "a household exclusion limits the amount a household member may recover to the sum mandated by the Maryland Financial Responsibility Law." *Id.* at 411–12, 575 A.2d at 342–43. In that case, Mrs. Walther was injured while getting out of the automobile that Mr. Walther insured and was driving.

HOUSEHOLD TO THE EXTENT THE LIMITS OF LIA-
BILITY OF THIS POLICY EXCEED THE LIMITS OF
LIABILITY REQUIRED BY LAW."

Carla Stearman, the wife of Jay Stearman, collectively the
appellants or the "Stearmans," was injured in a collision
involving a single car, of which her husband was the driver.
She alleged that her injuries were the result of her husband's
negligence.

The majority holds that the household exclusion is valid. It
relies on *Jennings v. Government Employees Ins.*, 302 Md.
352, 488 A.2d 166 (1985) and, primarily, *State Farm Mut. v.
Nationwide Mut., et al.*, 307 Md. 631, 516 A.2d 586 (1986).

In *Jennings,* the insured was injured while a passenger in a
car owned by him and driven by his stepson, who resided in
the insured's household. The automobile liability insurance
policy which the insured carried on the car contained an
exclusion for "[b]odily injury to an insured or any family
member of an insured residing in the insured's household."
302 Md. at 353, 488 A.2d at 167. In response to the insured's
declaratory judgment action, in which he sought a declaration
that, because the household exclusion in the policy was "void
because it is contrary to statute," GEICO was obligated to pay
the default judgment he had obtained against his stepson,
GEICO filed a declaratory judgment action of its own. It
sought a declaration that, by virtue of the exclusion, the
insured was "not entitled to any coverage." *Id.* at 354, 488
A.2d at 167. This Court reversed the judgment of the trial
court, which had upheld the validity of the household exclusion
provision. *Id.* at 362, 488 A.2d at 171. Rejecting GEICO's
defense of the validity of the household exclusion clause on the
basis that no Maryland statutory provision expressly forbids
it, we held

"the household exclusion clause is inconsistent with the
public policy which the General Assembly adopted in Ch. 73
of the Acts of 1972, providing for compulsory automobile

insurance for all Maryland automobiles with specified required coverages."

*Id.* at 357, 488 A.2d at 168.

*State Farm* addressed an issue neither presented nor decided in *Jennings*, "[w]hether the 'household exclusion' is wholly invalid, or whether its invalidity extends only to the amount of the minimum liability coverage required by the compulsory insurance law." 307 Md. at 633, 516 A.2d at 586–87. In that case, the automobile liability insurance policy at issue provided bodily injury coverage limits above the minimum required by law, but it excluded coverage for injury to "any insured or any member of an insured's family residing in the insured's household." *Id.* at 633, 516 A.2d at 586. The named insured was injured when his insured automobile, in which he was a passenger, was driven off the road by a friend, who was driving the car with the insured's permission. The driver's insurance carrier sought a declaratory judgment that the policy exclusion at issue, denominated a "household exclusion," was void as against public policy. *Id.* at 634, 516 A.2d at 586. We held "that the 'insured' segment of a 'household exclusion' clause[4] in an automobile liability insurance policy is invalid to the extent of the minimum statutory liability coverage. So far as the public policy evidenced by the compulsory insurance law is concerned, it is a valid and enforceable contractual

---

**4.** The limitation was deliberate, as footnote 1, in which the Court defined the nature of the "household exclusion," makes clear:

"The 'household exclusion' before us in this case involves two distinct components. One is the exclusion of the insured. The second is the exclusion of family members residing in the insured's household. The facts before us implicate only the first of these components." *State Farm Mut. v. Nationwide Mut.*, 307 Md. 631, 633 n. 1, 516 A.2d 586, 586 n. 1 (1986). *See* footnote 4, in which the Court, while explaining why *Meyer v. State Farm Mutual Auto. Insurance Company*, 689 P.2d 585 (Colo.1984) (en banc), a case which dealt with intra-family immunity, rather than inter-spousal immunity, was not persuasive, pointed out that, "Since the case before us deals only with the 'insured' portion of the 'household exclusion,' . . . the intra-family immunity concerns that were considered by the Colorado court have no pertinence here." 307 Md. at 640 n. 4, 516 A.2d at 590 n. 4. *See also* footnote 7, 307 Md. at 642, 516 A.2d at 591.

provision as to coverage above that minimum." *Id.* at 644, 516 A.2d at 592. We reasoned that "[a] contractual provision that violates public policy is invalid, but only to the extent of the conflict between the stated public policy and the contractual provision," explaining:

> "The public policy involved here is that all automobile liability policies shall contain bodily injury or death liability coverage in at least the amount of $20,000/$40,000. To permit the 'household exclusion' to operate within those limits would be to 'deprive injured persons of the protection which the Legislature intended to provide' ... and would violate public policy.... But liability coverage in excess of that minimum is expressly authorized. 'Nothing in this subtitle or in Title 17 of the Transportation Article prevents an insurer from issuing, selling, or delivering a policy of motor vehicle liability insurance providing liability coverage in excess of the requirements of the Maryland Vehicle Law.' ... 'There shall be available to the insured the opportunity to contract for higher amounts than those provided under Title 17 of the Transportation Article ...'. The General Assembly has not restricted the ability of parties to contract for or to limit coverage with respect to that 'excess' or those 'higher amounts.' The public policy embodied in the compulsory insurance law extends only to liability coverage up to and including the statutory minimum coverage."

*Id.* at 643–44, 516 A.2d at 592 (quoting *Keystone Mut. Cas. Co. v. Hinds*, 180 Md. 676, 682, 26 A.2d 761, 763 (1942); Maryland Code (1957, 1979 Repl. Vol., 1984 Cum. Supp.), Art. 48A, § 541(b) and § 541(c)(2)) (some citations omitted).

As indicated, this Court has not considered before the impact of the abolition of inter-spousal immunity on the viability of a clause in an insurance policy containing an household exclusion from bodily injury coverage above the minimum statutorily mandated amount. Nevertheless, rather than doing the analysis afresh, noting that the Court of Special Appeals addressed the issue in *Walther v. Allstate Insurance Company*, 83 Md.App. 405, 406, 575 A.2d 339, 340 (1990), the majority simply sets out the argument made by the Walthers

in that case, acknowledges that it is identical to the argument the Stearmans make in this case and states that it agrees with the intermediate appellate court's reasoning. 381 Md. at 451–52, 849 A.2d at 548–49. Moreover, it concedes that the public policy in Maryland is "crystal clear[, s]pouses can sue each other for anything that strangers could, with no fear that the defendant spouse will be permitted to raise interspousal immunity as a defense." *Id.* Taking an approach reminiscent of that taken by the *Walther* court, the majority argues, however:

"The question is, who pays the judgment, the negligent spouse or the negligent spouse's insurance company? Does Maryland's change in public policy regarding the common law doctrine of interspousal immunity require the insurance company of the negligent spouse to pay for the recovery of the injured spouse, even though the contract between the negligent spouse and the insurance company provides that there will be no recovery above the statutorily required minimums? Such a contract provision is clearly allowable under the mandatory minimum requirements laid out by the Legislature."

*Id.* at 452, 849 A.2d at 549. In any event, it concludes that, even though "recogniz[ing] that the public policy displayed by the complete abrogation of the interspousal immunity doctrine could be viewed as a policy that conflicts with the public policy displayed by the mandatory minimum liability insurance requirements set by the Legislature," *id.*, "the General Assembly, not the Court, is the appropriate body to reconcile these conflicting policies." *Id.* at 453, 849 A.2d at 549.

With respect to *State Farm*, other than stating the holding and the rationale underlying it, characterizing the holding as "clear," and noting its conclusion that "[t]he majority of jurisdictions that squarely address the issue before us has reached a result consistent with ours in this case," the majority provides little analysis or logic to support its conclusion that it is dispositive. *Id.* at 444, 849 A.2d at 544.

To be sure, the majority rejects the argument advanced by the appellants, that *West Am. Ins. Co. v. Popa*, 352 Md. 455,

723 A.2d 1 (1998) is dispositive, as "this Court has consistently held that exclusions from statutorily mandated insurance coverage not expressly authorized by the Legislature generally will not be recognized." Stating that their argument is not persuasive, the majority simply repeats what we said in *Van Horn v. Atlantic Mut. Ins. Co.*, 334 Md. 669, 694–95, 641 A.2d 195, 207–08 (1994), in distinguishing *State Farm* from that case:

> "In *State Farm Mut. v. Nationwide Mut.*, *supra.*, this Court reaffirmed its earlier holding in *Jennings v. Government Employees Ins.*, *supra* 302 Md. 352, 488 A.2d 166, that a 'household exclusion' clause in an automobile liability insurance policy was contrary to the public policy embodied in Maryland's compulsory motor vehicle insurance law. We went on in *State Farm*, however, to hold that the household exclusion clause was invalid only to the extent of the statutorily prescribed minimum liability coverage of $20,000/$40,000. We pointed out that it could 'readily be inferred that the premium took account of the exclusion contained in the policy' (307 Md. at 638, 516 A.2d at 589), that the majority of compulsory insurance jurisdictions had invalidated household exclusion clauses only to the extent of the statutorily prescribed mandatory minimum liability coverage (307 Md. at 641–643, 516 A.2d at 591–592), and that '[a]s a general rule, parties are free to contract as they wish' (307 Md. at 643, 516 A.2d at 592)."

To the argument by the appellants that § 19–502(b) of the Insurance Article, pursuant to which the insurance company may provide more than the minimum amount of insurance required to be carried, reflects a legislative intent that, once the greater amount has been provided, exclusions from that coverage amount may not made except when explicitly permitted by legislative act, the majority's only response is that:

> "The plain language of [§ 19–502(b)] evidences an intention *to permit* insurance companies to offer policies that contain greater coverage than that required by statute. It certainly does not *require* insurance companies to provide coverage greater than that mandated by statute. Nor does it display

a legislative intention to change the public policy embodied in the statutorily mandated minimum liability coverage requirements. The Stearmans have cited no Maryland case that supports such a position."

381 Md. at 448, 849 A.2d at 546–47.

The majority is simply wrong.

Without citing any authority, the majority states that a provision in an insurance contract between an insurer and a negligent spouse, providing for no recovery by that spouse's injured spouse above the statutorily mandated amount of insurance "is clearly allowable under the mandatory minimum requirements." 381 Md. at 452–53, 849 A.2d at 549. On the contrary, that is not at all clear. Indeed, it is the opposite that is clear, that such an exclusion clearly is not allowable Section 19–504 provides that "[e]ach motor vehicle liability insurance policy issued, sold, or delivered in the State shall provide the minimum liability coverage specified in Title 17 of the Transportation Article." Section 17–103(b) of the Transportation Article, in turn, provides:

"(b) The security required under this subtitle shall provide for at least:

"(1) The payment of claims for bodily injury or death arising from an accident of up to $20,000 for any one person and up to $40,000 for any two or more persons, in addition to interest and costs;

"(2) The payment of claims for property of others damaged or destroyed in an accident of up to $15,000, in addition to interest and costs;

"(3) Unless waived, the benefits described under § 19–505 of the Insurance Article as to basic required primary coverage; and

"(4) The benefits required under § 19–509 of the Insurance Article as to required additional coverage."

Section 19–502, however, makes clear that more than the minimum coverage may be offered an insured by an insurer, providing:

"(b) Neither this subtitle nor Title 17 of the Transportation Article prevents an insurer from issuing, selling, or delivering motor vehicle liability insurance policies that provide liability coverage in excess of the requirements of the Maryland Vehicle Law."

It is significant that, in addition to the required minimum coverage for bodily injury, § 17–103(b) includes, unless waived, P.I.P. coverage in a basic required primary amount and uninsured motorist coverage. Even more significantly, the General Assembly has expressly provided that those latter coverages may be excluded with respect to particular persons.

Section 19–505(c)(1) states:

"An insurer may exclude from the coverage described in this section benefits for:

\* \* \* \*

"(ii) The named insured or a family member of the named insured who resides in the named insured's household for an injury that occurs while the named insured or family member is occupying an uninsured motor vehicle owned by:

"1. The named insured; or

"2. An immediate family member of the named insured who resides in the named insured's household.

"(2) In the case of motorcycles, an insurer may:

"(i) Exclude the economic loss benefits described in this section; or

"(ii) Offer the economic loss benefits with deductibles, options, or specific exclusions."

Similarly, § 19–509(f) permits an insurer to exclude from the required uninsured motorist coverage:

"(1) The named insured or a family member of the named insured who resides in the named insured's household for an injury that occurs when the named insured or family member is occupying or is struck as a pedestrian by an uninsured motor vehicle that is owned by the named insured or an immediate family member of the named insured who resides in the named insured's household; and

"(2) The named insured, a family member of the named insured who resides in the named insured's household, and any other individual who has other applicable motor vehicle insurance for an injury that occurs when the named insured, family member, or other individual is occupying or is struck as a pedestrian by the insured motor vehicle while the motor vehicle is operated or used by an individual who is excluded from coverage under § 27–606 of this article."

There is no comparable exclusion provision applicable to the primary liability coverage.

In *Jennings*, after noting that the General Assembly expressly mandated that all Maryland automobiles be covered by automobile policies containing certain required coverages, 302 Md. at 357–58, 488 A.2d at 168–69, this Court pointed out that the same statutory provisions "expressly authorized specified exclusions from the required coverages." *Id.* at 358, 488 A.2d at 169. Mentioning specifically those related to cancellations or non-renewals as a result of driving records or claims experience, codified in former Art. 48A, § 240C–1, and permitted exclusions from P.I.P. and uninsured motorist coverage, as prescribed in Art. 48A, §§ 541(c)(2) and 545, the Court stated the general rule: "generally we will not insert exclusions from the required coverages beyond those expressly set forth by the Legislature." We relied on *DeJarnette v. Federal Kemper Ins. Co.*, 299 Md. 708, 725, 475 A.2d 454 (1984); *Pennsylvania Nat'l Mut. v. Gartelman*, 288 Md. 151, 156, 159–160, 416 A.2d 734, 738 (1980). In *Gartelman*, we refused to validate an exclusion for an insured who was injured while occupying a car owned by a named insured, noting that it was not one of the four exclusions expressly provided by the Legislature.

As we have seen, that rule was reiterated in *Popa.* 352 Md. at 475, 723 A.2d at 11. Moreover, we noted in that case that, "[t]he holding of the *State Farm Mut.* case, . . . has not been applied by this Court to any other automobile insurance policy exclusions or provisions." This is so, we explained, because:

"Adoption of the broad proposition advanced by West American would permit insurers to load up motor vehicle insur-

ance policies with a multitude of invalid exclusions, thereby limiting coverage in numerous situations to the statutory minimums instead of the stated coverage limits set forth on the insured's declaration page. For example, an insured could purchase what he believed was $300,000 liability insurance, pay a premium for $300,000 liability insurance, and, after an accident, discover that he has only $20,000/$40,000 liability insurance because the circumstances fell within one or more of the many invalid exclusions or exceptions in the insurance policy. Persons who paid much more in premiums for coverage in excess of minimums could, in many circumstances, receive no more than those who only paid for minimum coverages."

352 Md. at 477, 723 A.2d at 12. We refused to extend the *State Farm* holding beyond the household exclusion clause which was involved in that case.

*State Farm*, by its express terms, "professed" to be a very narrow decision—in its first footnote, the Court acknowledged the two components of the household exclusion, pointing out that only one, the insured component, applied, and expressed its holding on that basis. 307 Md. at 633, 516 A.2d at 587. *Walther*, whose reasoning the majority professes to accept, relied almost entirely, if not wholly, on *State Farm*. Although the *Walther* majority recognized this to be so, it was persuaded "to draw the inference that the Court's opinion [in *State Farm v. Nationwide*] is more sweeping than the footnote professes it to be," by the fact that the Court of Appeals rejected certain cases,[5] 83 Md.App. at 409, 575 A.2d at 341–342. For the same reason, it conclude that "*State Farm* implicitly approved the household exclusion clause's application to spouses of insured motor vehicle operators," *id.*, an inference strengthened, we are told, by "those foreign cases upon which the Court in *State Farm* relied and 'aligned'

---

**5.** *Estep v. State Farm Mut. Auto. Ins. Co.*, 103 N.M. 105, 703 P.2d 882 (1985); *Hughes v. State Farm Mut. Auto. Ins. Co.*, 236 N.W.2d 870 (N.D.1975); *Meyer v. State Farm Mut. Auto. Ins. Co.*, 689 P.2d 585 (Colo.1984).

itself."[6] *Id.* at 410, 575 A.2d at 342. The express exclusion on which the *Walther* court premised its holding was the one contained in Art. 48A, § 545(c), now § 19–509(1), permitting the insurer to exclude from uninsured motorist coverage "the named insured or members of his family residing in the household when occupying an uninsured motor vehicle that is owned by the named insured or a member of his immediate family residing in his household."

That provision does not sanction an exclusion from the primary liability coverage, and there is no comparable exclusion expressly provided from that coverage. Therefore, the *Walther* holding flies in the face of our precedents. Moreover, *Walther* is also wrong on the breadth of the *State Farm* decision as well as the public policy question.

*State Farm* not only professed to be narrow in scope, judging from the way it was crafted, it was, in fact, narrowly drawn. As I explained in dissent in *Walther:*

"The scope of the opinion, and by necessary implication, its limitations were established very early on. The Court was careful to point out, in the first footnote, what was at issue and, indeed, what was not. As it discussed the cases pro and con, pertinent to the issue presented, and any legislative action bearing on the subject, it was careful to note, usually in a footnote, how it was that they, or the actions, were pertinent to the issue before it. In fact, careful reading of the footnotes, in context, makes obvious that the Court's entire discussion focused upon the rationale, rather than the factual context, of the various cases and how that rationale related to the issue of the viability of the 'insured' aspect of the household exclusion. Thus, we may only assess the Court's discussion of the cases, both pro and con, in the context of the 'insured' aspect of the exclusion.

---

6. *Dewitt v. Young,* 229 Kan. 474, 625 P.2d 478 (1981); *Pennsylvania Nat. Mut. Cas. Ins. v. Parker,* 282 S.C. 546, 320 S.E.2d 458 (1984); *Bishop v. Allstate Ins. Co.,* 623 S.W.2d 865 (Ky.1981); *Arceneaux v. State Farm Mutual Automobile Ins. Co.,* 113 Ariz. 216, 550 P.2d 87 (1976); *Estate of Neal v. Farmers Ins. Exch.,* 93 Nev. 348, 566 P.2d 81 (1977).

Indeed, I believe that State Farm. by its very terms, does not even address the 'other family members' segment of the household exclusion. If this were not sufficient, the Court's holding, as we have seen, explicitly addressed *only* the " 'insured' segment" of the household exclusion. Consequently, I do not believe that the majority's very broad reading of *State Farm* is correct."

"And, in my opinion, the Court's limitation of its holding, particularly in view of the careful way in which it did so, is significant. Since they are but different segments of the same issue, it would have been very simple, and, indeed, would have provided clearer guidance, for the Court simply to have addressed the household exclusion in a unitary fashion. And, given the different foci of the cases discussed by the Court, there was every incentive, if the considerations are indeed the same, for the Court to have addressed them together. It did not, however, as we have seen. I believe that it did not because it recognized that there are different considerations applicable to each segment of the exclusion; the 'other household members' segment involves different considerations than does the 'insured' segment. And within the 'other household members' segment, itself, there are sub-segments ... as to each of which there may also be different considerations, depending upon the relationship of the household member to the insured...."

83 Md.App. at 413–14, 575 A.2d at 343–44 (Bell, J. dissenting). I might have mentioned expressly, what is certainly implicit in the foregoing, that it is one thing to allow an insured to contract away his or her rights, even when the Legislature has not specifically spoken on the subject, and quite another when, by so doing, he or she adversely affects the rights of third party strangers, as to which the legislative has expressly spoken.

In reality, in the absence of inter-spousal immunity, the nature of the relationship between spouses, for purposes of litigation, is not that of related persons; rather it is one of stranger to stranger:

"The abolition of inter-spousal immunity has meaning only if one spouse is able to maintain an action against the other and, more importantly, recover from that spouse to the same extent that a stranger could. No problem is presented when insurance is not involved; the injured spouse, as would the stranger, looks solely to the negligent spouse for compensation. Where, however, the act of negligence is covered by insurance, a somewhat different situation exists. Ordinarily, as is the situation *sub judice,* the policy of insurance will provide for the payment "for all damages an insured is legally obligated to pay because of bodily injury...." Thus, in that scenario, a successful unrelated litigant is entitled to recover from the insurer all of his or her damages up to the face amount of the policy. After *Boblitz,* an injured spouse was able to recover to the same extent. Under the majority decision, upholding the validity of the household exclusion as to the excess insurance above the minimum required, however, an injured spouse coming within the negligent spouse's policy coverage, who, in all respects save relationship to the insured, is in the same situation as a stranger, may recover only the minimum required coverage. This result, while paying lip service to *Boblitz's* abolition of interspousal immunity, substitutes a more subtle form of immunity, which has the effect of undermining *Boblitz."*

*Id.* at 416–17, 575 A.2d at 345 (Bell, J. dissenting). This reasoning is equally apposite to the case *sub judice.*

The *Walther* majority and, because it agrees with the rationale of that case, *see* 381 Md. at 452, 849 A.2d at 548, the majority in this case, find support for their position in the facts that "[n]othing in *Boblitz* purports to declare that the minimum coverage mandated by Transp. Art. § 17–103(b)(1) does not apply to an insured's spouse," 83 Md.App. at 410, 575 A.2d at 342, and that the uninsured motorist provision permits an insurer to insert an household exclusion in an insurance policy, in connection with an uninsured motor vehicle. They find comfort also in the insurer's right to limit its liability and to impose such conditions, by contract, that it wishes so long

as it does not "[contravene] a statutory inhibition or the state's public policy." *Id.* at 411, 575 A.2d at 342. As to those arguments:

"The majority is, of course, correct, *Boblitz* does not purport to declare that the minimum coverage mandated by § 17–103(b)(1) does not apply to an insured's spouse, but neither does it purport to declare that it does apply. The majority's reliance on Art. 48A § 545(c) is simply irrelevant; it permits such an exclusion with respect to an uninsured motor vehicle, not, as here, an insured one. Nor does the majority's reliance upon the insurer's right to limit its liability have validity.

"To hold the household exclusion totally invalid insofar as husband and wife is concerned does no violence, whatsoever, to the right of an insurer to contract with its insured, consistent with public policy. In this case, public policy favors permitting one spouse to sue the other for negligence and to recover for injuries caused by that spouse's negligence. That public policy is contravened when the insured, by contracting with the insurer, can limit his or her spouse's recovery. This is so because, in effect, such a contract, at least partially, abrogates the Court's prior abolition of inter-spousal immunity. To be sure, such a holding would, and does, as the majority says, interfere with the insurer's right to contract; however, it does so consistent with, and in the same sense that the requirement of mandatory minimum insurance coverage does. As such, it goes only as far as the law permits and no further."

*Id.* at 418, 575 A.2d at 346 (Bell, J. dissenting).

In this case, the insured and the insurer contracted for the insured to provide coverage in excess of the minimum amount statutorily required to be carried. At the same time, they purported to exclude from that coverage a category of risk that the General Assembly did not expressly authorize to be excluded, members of the insured's household, including, therefore, the insured's spouse, who, by virtue of the abolition of inter-spousal immunity in negligence cases, like a stranger to the insured, is under no restrictions with respect to the

amount that may be recovered. I would hold that the attempted exclusion is void. Accordingly, I dissent.

Judge BATTAGLIA joins in the views herein expressed.